UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOSEPH C. JAMES,

      Plaintiff,       **MEMORANDUM AND ORDER**
                 10 CV 4953 (DRH) (WDW)

     - against -

COUNTRYWIDE FINANCIAL CORP.,
COUNTRYWIDE HOME LOANS, INC.,
BANK OF AMERICA, CORP., ROBERT
DONOVAN, WILLIAM PURSCHKE, and
SCOTT HOROWITZ,

      Defendants.
----------------------------------------------------------X
**APPEARANCES:**

**Attorneys for Plaintiff**

**WEISS IMBESI, PLLC**
450 Seventh Avenue, Suite 3002
New York, New York 10123
By: Jeanne Christensen, Esq.
   Marni Elyse Weiss, Esq.

**LAW OFFICE OF JILL L. BROOKS, ESQ.**
500 Mamaroneck Avenue, Suite 320
Harrison, New York 10528
By: Jill L. Brooks, Esq.

**Attorneys for Defendants**

**KAUFMAN, BORGEEST & RYAN LLP**
120 Broadway, 14th Floor
New York, New York 10271
By: Jonathan B. Bruno, Esq.
   Deborah M. Zawadzki, Esq.

**EDWARDS ANGELL PALMER & DODGE LLP**
111 Huntington Avenue
Boston, Massachusetts 02199
By: Alice A. Kokodis, Esq. (*Pro Hac Vice*)
   Caroline F. Turcotte, Esq. (*Pro Hac Vice*)

**HURLEY, Senior District Judge:**

Plaintiff Joseph C. James commenced this action against defendants Countrywide Financial Corp., Countrywide Home Loans, Inc., and Bank of America, Corp. (collectively, "Countrywide") alleging employment discrimination and retaliation on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), and the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYHRL"). Plaintiff has also asserted claims against his former supervisors Robert Donovan, William Purschke, and Scott Horowitz (collectively, the "Individual Defendants") pursuant to Section 1981 and the NYHRL. Finally, plaintiff asserts claims against Countrywide for unpaid wages and compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and New York Labor Law ("NYLL").

Presently before the Court is defendants' motion to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion is granted in part and denied in part.

## *BACKGROUND*

The following factual recitation is taken from the Amended Complaint and the exhibit attached thereto, as well as from certain administrative agency filings, of which the Court may take judicial notice.

### *Plaintiff's Employment*

Plaintiff, an African-American male, was hired by Countrywide on February 24, 2003 to

2

the position of Area Sales Manager.  (Am. Compl. ¶ 16.)  Jeffrey Creighton, then a Regional

Vice President, supervised plaintiff.  (*Id.*)  Between 2003 and 2006, plaintiff was considered a

"top producer" and was "ranked nationally in the top 1% of all sales personnel" for the 2004-

2005 production years.  (*Id.* ¶ 20.)  On May 1, 2006, Creighton promoted plaintiff and assigned

him to "manag[e] a team of 12 lower level Area Managers."  (*Id.* ¶ 21.)  Less than one year after

this promotion, however, plaintiff's position was eliminated "due to a mass reduction-in-force."

(*Id.* ¶ 22.)  Plaintiff was informed that "his employment was being terminated effective

immediately."  (*Id.*)

### *Plaintiff's Scheduled Interview With Jobe Turini*

Shortly thereafter, Countrywide's Full Spectrum Division contacted plaintiff to set up an

interview for the position of Branch Manager in the Retail Division at Full Spectrum's retail

branch in Lake Success, New York.  (*Id.* ¶ 24.)  Plaintiff viewed this as an "extremely beneficial

career development."  (*Id.* ¶ 27.)  Plaintiff scheduled an interview with Regional Vice President

Jobe Turini, the manager of the Lake Success branch.  (*Id.* ¶ 28.)  When plaintiff arrived for the

interview on March 20, 2007, however, he "was told that Turini was not in the office."  (*Id.* ¶¶

29, 30.)  Plaintiff was never able to speak to Turini, who did not return plaintiff's follow-up

telephone calls, and Countrywide Human Resources was not able to reschedule the interview.

(*Id.* ¶¶ 30, 32, 33.)

Plaintiff subsequently learned that Turini was a Caucasian male of Greek descent.  (*Id.* ¶

25.)  Plaintiff alleges that he "was later told by a (former) employee who had worked directly

with Turini . . . that Turini was known to strongly favor the hiring of Caucasians of Greek

[descent] for managerial positions."  (*Id.* ¶ 34.)  Plaintiff knew that, prior to the March 2007

reduction-in-force, "his picture had been posted on Countrywide's intranet website," which was accessible to Turini. (*Id.* ¶ 35.) Plaintiff alleges that this experience was his "first warning that there was a stark and substantial difference in the treatment of minority employees within [ ] Countrywide['s] retail divisions." (*Id.* ¶ 31 (emphasis omitted).)  According to plaintiff, Countrywide "knew or should have known that Turini had a history of preferential hiring of managers . . . who were Caucasian and of Greek descent to the exclusion of African American employees." (*Id.* ¶ 38 (emphasis omitted).)  Plaintiff further asserts that Countrywide permitted Turini "to avoid interviewing or hiring Plaintiff for the Full Spectrum Lake Success office ([a] predominately Caucasian community)." (*Id.* ¶ 56.)

**Plaintiff's Employment at the Massapequa Park Office**

At plaintiff's request, Countrywide scheduled another interview for plaintiff, this time with Dennis Racio, the Area Manager for the Massapequa Park, New York office. (*Id.* ¶¶ 40, 41.)  Following this interview, on March 29, 2007, plaintiff was offered the position of Sales Manager. (*See id.* ¶ 41.)  Plaintiff's main assigned task was "to get this new Massapequa Park [ ] branch up and running and to recruit personnel for it." (*Id.* ¶ 42.)  Plaintiff supervised Karen Laurence, the only Home Loan Consultant working at that branch office. (*Id.* ¶¶ 42, 44.)

**Plaintiff's Promotion to Branch Manager and Horowitz's Assignment as co-Branch Manager**

On or about July 11, 2007, plaintiff was promoted to Branch Manager of the Massapequa Park branch. (*Id.* ¶ 43.)  Less than one month later, on or about August 6, 2007, defendant Robert Donovan, a Regional Senior Vice President and plaintiff's new supervisor, informed plaintiff that he had personally recruited and hired defendant Scott Horowitz, a Caucasian male who had previously worked for a Countrywide competitor, to be plaintiff's co-Branch Manager.

4

(*Id.* ¶¶ 45-46.)  Plaintiff "felt upstaged and disregarded by Defendant Donovan because he was denied any pre-hiring managerial input or any decision-making influence . . . in Horowitz's hiring even though he had been clearly delegated full authority for recruiting new hires for his branch."  (*Id.* ¶ 47.)

Plaintiff cites this incident as an example of the lack of "respect" paid to him by "management[]," and alleges that he "was made to feel like the 'token' African American Branch Manager at the Massapequa Park branch office[,] which was located in a community having a (99.8%) predominately Caucasian population."  (*Id.* ¶ 55.)  Plaintiff alleges that, "[b]y hiring Horowitz, Donovan made sure that Plaintiff was not the only Branch Manager 'face' that Caucasian loan customers would see."  (*Id.* ¶ 56.)

According to plaintiff, despite his superior work credentials and longer tenure as a Countrywide employee, he received a less "favorable compensation package" than Horowitz. (*Id.* ¶¶ 59, 63.)  Plaintiff also alleges that he "was relegated the lion share of ministerial duties pertaining to Horowitz's hiring, including requisitioning business cards and stationary and obtaining desk top items for Horowitz."  (*Id.* ¶ 62 (emphasis omitted).)

***Plaintiff's Interactions With Purschke***

Defendant William Purschke was hired by Countrywide on September 15, 2007.  (*Id.* ¶ 64.)  Although the Amended Complaint does not specify Purschke's job title, it appears that he acted in a supervisory capacity to both plaintiff and Horowitz while they served as co-Branch Managers.  According to plaintiff, "Purschke previously managed Horowitz at a competitor company's branch."  (*Id.* ¶ 64.)

Plaintiff alleges that Horowitz "received more favorable treatment" from Donovan and

Purschke.  (*Id.* ¶ 66.)  Specifically, Purschke visited and "provided management support" to Horowitz but not plaintiff, and promptly returned Horowitz's telephone calls while failing to do the same for plaintiff.  (*Id.* ¶ 66(a), (b).)  Additionally, while Purschke attended Horowitz's sales presentations at real estate brokers' offices, as well as events at the request of other Caucasian Branch Managers at other locations (*see id.* ¶ 82), Purschke ignored and did not attend "Plaintiff's events," including an event sponsored by *100 Black Men of Long Island*.  (*Id.* ¶ 66(c).)  Plaintiff alleges that both Purschke and Donovan subjected him to "harsh ridicule, intimidation and [a] condescending demeanor."  (*Id.* ¶ 66(e).)  With respect to Laurence, the sole employee under plaintiff's supervision, plaintiff asserts that Purschke and Donovan failed to provide any "senior management support" to plaintiff after he had a problem with Laurence's insubordinate behavior.  (*Id.* ¶ 66(f).)  Moreover, Purschke and Donovan failed to inform plaintiff that Laurence, the "top producer" in the branch, had requested an internal transfer and, as such, "sabotaged Plaintiff's ability to have any positive resolution to retain Laurence and her valuable production."  (*Id.* ¶ 66(g), (h).)

Finally, plaintiff alleges that even though recruitment for his branch was supposed to be a top priority, his recruiter, Laurence Eisenstat, did not supply him with sufficient recruits, and "Purschke did nothing to ensure Plaintiff would receive recruits fairly and impartially."  (*Id.* ¶ 83 (emphasis omitted).)  In fact, plaintiff contends that Donovan, Purschke and Horowitz went even further by "influenc[ing], encourag[ing] and/or instruct[ing]" Eisenstat to assist them "in the systematic and intentional sabotage" of plaintiff's efforts to recruit for his branch.  (*Id.* ¶ 84.)  In that regard, various recruits were diverted from plaintiff and sent to "non-minority branch managers."  (*Id.* (emphasis omitted).)

6

***Plaintiff's November 28, 2007 Internal Complaint and Subsequent Events***

On November 28, 2007, plaintiff sent an internal complaint to Sarah Zimmerman, a Countrywide Human Resources Manager, regarding "the discriminatory conduct and racial bias to which he was subjected." (*Id.* ¶ 66(i).) The same day, Purschke informed plaintiff that the Massapequa Park branch was being closed, plaintiff's Branch Manager position was to be eliminated, and that plaintiff's employment was being terminated effective November 30, 2007. (*Id.*)

During that conversation, Purschke informed plaintiff that Horowitz was being retained as a Branch Manager and transferred to another office. (*Id.* ¶ 66(j).) In response to plaintiff's inquiry about the possibility of a transfer, Purschke offered plaintiff "the option of being demoted to a sales manager [position] for less compensation and reporting to Horowitz as his new supervisor." (*Id.* (emphasis omitted).) Plaintiff accepted the demotion to a Sales Manager position and received a "substantial reduction in compensation" such that his compensation package was "materially inferior to what he had earned and what Horowitz continued to earn by being retained as Branch Manager." (*Id.* ¶ 66(k).) In particular, plaintiff's compensation package included "monthly draws" that were less than those received by Creighton, who was now working as a loan officer and a subordinate to plaintiff. (*Id.*) When plaintiff asked Purschke to increase his draws to match Creighton's, Purschke refused. (*Id.*) Finally, plaintiff alleges that he was "subjected to unusually slow processing of customer loan applications as compared to Horowitz and others," which adversely affected his compensation. (*Id.* ¶ 66(l).)

***Plaintiff's December 18, 2007 Internal Complaint***

On December 18, 2007, plaintiff filed a second internal complaint to Countrywide's

Human Resources department, which "referenc[ed] Purschke's inequitable application of
compensation practices and lack of management support." (*Id.* ¶ 72.) Human Resources
determined that the complaint was "unsubstantiated" and closed the case, thereby causing
plaintiff to "feel dejected, humiliated and helpless." (*Id.*)

### The May 8, 2008 Incident and Aftermath

On May 8, 2008, plaintiff and Horowitz got into a confrontation in a parking lot that
culminated with Horowitz repeatedly screaming "That's bullshit!" to plaintiff while making
"threatening and menacing facial expressions." (*Id.* ¶ 73.) After this incident, Horowitz refused
to assist plaintiff "with any customer loan processing problems" and, as a result, plaintiff's
"expected May funding substantially declined." (*Id.* ¶ 74 (emphasis omitted).)

### Plaintiff's Written Counseling

On May 15, 2008, Purschke presented plaintiff with a formal Written Counseling, dated
May 7, 2008. (*Id.* ¶ 76.) The Written Counseling was purportedly intended to discipline plaintiff
for his referral of a walk-in customer to his subordinate, and "warned of Plaintiff's potential
termination." (*Id.* ¶¶ 76, 77.) Plaintiff alleges that "Horowitz was the instigator behind the
underlying complaint," which plaintiff asserts was "false and unsubstantiated," and that Horowitz
intended the Written Counseling "to threaten and dissuade Plaintiff from making complaints
about Horowitz to the company." (*Id.* ¶ 76.) Specifically, the Written Counseling had come on
the heels of plaintiff's filing of another internal complaint, in which he relayed a customer's
allegations that Horowitz had breached company policy. (*Id.*)

On July 24, 2008, plaintiff received an email from Countrywide Human Resources
representative Amanda Hart, which advised plaintiff that six of the eight items set forth in the

8

May 7, 2008 Written Counseling were removed, and that a modified Written Counseling would be issued.  (*Id.* ¶ 77.)  To plaintiff's surprise, however, the modified Written Counseling presented to plaintiff by Donovan on July 29, 2008 included a new allegation that plaintiff "'demonstrated poor customer service' on May 25, 2008 by referring a walk-in customer to another salesperson on Plaintiff's team."  (*Id.* ¶ 78.)  Plaintiff alleges that this new allegation constituted nothing more than a "false[ ] reprimand[ ]" for plaintiff's "'managerial' decision." (*Id.*)

### *Post-Employment Retaliation*

The Court presumes from the allegations in the Amended Complaint, as well as from the submissions of the parties, that plaintiff's employment at Countrywide ultimately came to an end. Specifically, plaintiff alleges that defendants engaged in "post-employment" retaliation against him.  Plaintiff asserts that after he secured a new job, he informed his new supervisor, Brian Pasely, that he used to work with Donovan.  Two days later, plaintiff's employment was terminated "without any further explanation."  (*Id.* ¶¶ 109-11.)  Plaintiff alleges that Donovan had informed Pasely about the internal complaints and subsequent formal discrimination charges filed by plaintiff.  (*Id.* ¶¶ 112-13.)

### *Procedural History*

On October 29, 2008, plaintiff filed a charge of discrimination (the "Charge") against "Countrywide Home Loans, Inc." with the New York State Division of Human Rights (the "SDHR").  (Defs.' Ex. A.)[1]  The Charge was sent by the SDHR to the Equal Employment

---

[1]      Over plaintiff's objection, the Court will take judicial notice of the relevant administrative agency documents submitted by defendants and will consider them as part of this Rule 12(b)(6) motion for the reasons set forth in the text, *infra*.  The Court notes that plaintiff has

Opportunity Commission ("EEOC") for dual-filing purposes.  (Defs.' Ex. B.)  On March 23,

2010, the SDHR issued a Determination and Order After Investigation (the "SDHR Order") with

a no probable cause finding.  (Defs.' Ex. C.)  The EEOC reviewed the action, presumably at

plaintiff's request, and on July 29, 2010 issued a Dismissal and Notice of Rights ("Right to Sue

Notice"), which notified plaintiff that the EEOC had adopted the findings of the SDHR.

Plaintiff commenced the present lawsuit on October 27, 2010.  The original Complaint

alleged violations of Title VII, the NYHRL, and Sections 1981 and 1983.  Plaintiff filed the

Amended Complaint on January 24, 2011, and added claims for breach of contract, unjust

enrichment, and violations of the FLSA and NYLL.  In his opposition papers to the present

motion to dismiss, plaintiff has stated that he does not oppose the dismissal of his Section 1983

claims.  (Pl.'s Opp'n at 2 n.2.)  Accordingly, the Seventh Cause of Action, which alleges

violations of Section 1983, is hereby dismissed in its entirety.

## DISCUSSION

### I.    Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a pleading shall contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court

has recently clarified the pleading standard applicable in evaluating a motion to dismiss under

Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-

known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be

---

raised no objections as to the authenticity or accuracy of the copies of the SDHR and EEOC
documents submitted by defendants.

dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S.

at 561 (quoting *Conley*, 355 U.S. at 45-46). Instead, to survive a motion to dismiss under

*Twombly*, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its

face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to
> dismiss does not need detailed factual allegations, a plaintiff's
> obligation to provide the grounds of his entitlement to relief
> requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do.
> Factual allegations must be enough to raise a right to relief
> above the speculative level, on the assumption that all the
> allegations in the complaint are true (even if doubtful in fact).

*Id*. at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009), the Supreme

Court provided further guidance, setting forth a two-pronged approach for courts deciding a

motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no

more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 129 S. Ct. at 1950.

"While legal conclusions can provide the framework of a complaint, they must be supported by

factual assumptions." *Id*. Thus, "[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id*. at 1949 (citing *Twombly*, 550 U.S.

at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at

1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads
> factual content that allows the court to draw the reasonable
> inference that the defendant is liable for the misconduct
> alleged. The plausibility standard is not akin to a "probability
> requirement," but it asks for more than a sheer possibility that
> a defendant has acted unlawfully. Where a complaint pleads
> facts that are "merely consistent with" a defendant's liability,
> it "stops short of the line between possibility and plausibility
> of 'entitlement to relief.'"

*Id*. at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II.      *Administrative Agency Documents Submitted by Defendants*

In moving for dismissal of the Complaint, defendants rely heavily upon the Charge as well as the SDHR Order and the Right to Sue Notice.  Plaintiff argues that the Court may not properly consider these documents on a Rule 12(b)(6) motion without converting it to a motion for summary judgment.  (Pl.'s Opp'n at 6.)  The Court disagrees and finds it entirely proper to consider SDHR and EEOC filings because they are public documents filed in the context of administrative agency proceedings, and because they are integral to plaintiff's claims.  *See Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 565-66 (2d Cir. 2006); *Musaji v. Banco do Brasil*, 2011 WL 2507712, at *4 n.4 (S.D.N.Y. June 21, 2011); *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 435-36 (E.D.N.Y. 2010).

## III.     *Plaintiff's Title VII Discrimination Claims*

Defendants contend that the majority of plaintiff's Title VII discrimination claims should be dismissed as time-barred.  Before a plaintiff may file a Title VII claim in federal court, he

"must first pursue available administrative remedies . . . ."  *Deravin v. Kerik*, 335 F.3d 195, 200

(2d Cir. 2003).  The governing statutory language of Title VII provides:

> A charge under this section shall be filed within one hundred and
> eighty days after the alleged unlawful employment practice occurred
> . . ., except that in a case of an unlawful employment practice with
> respect to which the person aggrieved has initially instituted
> proceedings with a State or local agency with authority to grant or
> seek relief from such practice . . ., such charge shall be filed by or on
> behalf of the person aggrieved within three hundred days after the
> alleged unlawful employment practice occurred . . . .

42 U.S.C. § 2000e-5(e)(1).  In New York, the SDHR "has authority to remedy employment

discrimination," which makes New York a "so-called deferral state" under Title VII.  *Harris v.

City of New York*, 186 F.3d 243, 248 n.2 (2d Cir. 1999).  Therefore, a New York plaintiff has 300

days from the occurrence of a discriminatory act to file a charge of discrimination.  *See Ragone v.

Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 126 (2d Cir. 2010).

### A.    Timeliness of Plaintiff's Title VII Discrimination Claims

Plaintiff filed the Charge with the SDHR on October 29, 2008.  Thus, only alleged

misconduct occurring on or after January 3, 2008 would fall within the 300-day limitations

period.  Where, as here, "a plaintiff's allegations of discrimination extend beyond the 300-day

limitations period, the nature of the claim determines what consideration will be given to the

earlier conduct."  *Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004).  With respect to claims

based upon "discrete acts" of discrimination such as termination, failure to promote, or demotion,

an administrative charge must be filed within 300 days "after the discrete discriminatory act

occurred."  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113-14 (2002).

Here, assuming that any of the following alleged conduct even constitutes "discrete acts" of discrimination as contemplated by *Morgan* and its progeny, such alleged conduct occurred prior to January 3, 2008 and is clearly no longer actionable: (1) plaintiff's termination due to a reduction-in-force on March 10, 2007; (2) any discriminatory failure of Turini to interview plaintiff on March 20, 2007; (3) Donovan's hiring of Horowitz, and the resulting impact to plaintiff, in August 2007; (4) Any alleged discrete acts of discrimination taken against plaintiff by Purschke, Donovan, or Horowitz leading up to plaintiff's December 18, 2007 internal complaint; and (5) the alleged conspiracy between Purschke and Eisenstat to sabotage plaintiff by diverting recruits from his branch to other non-minority branch managers.[2]  Although this alleged conduct may not form the basis of a discrimination claim against defendant, plaintiff may use it "as background evidence in support of a timely claim."  *Morgan*, 536 U.S. at 113; *see also Petrosino*, 385 F.3d at 220.

### B.  *Legal Sufficiency of Plaintiff's Remaining Title VII Discrimination Claims*

Title VII prohibits an employer from discriminating against any employee or applicant for employment "because of such individual's race . . . ."  42 U.S.C. § 2000e-2(a)(2).  In order to establish a prima facie case of race discrimination, plaintiff must establish that he: (1) is a member of a protected class; (2) was qualified for the position he held; and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000).  At the pleading stage,

---

[2]  Although the Amended Complaint does not specify when this alleged conspiratorial conduct occurred, it appears from the context of the pleading that it took place prior to the closure of the Massapequa Park branch on November 30, 2007.  (*See* Am. Compl. ¶ 86.)

14

however, a plaintiff is "not require[d] [ ] to plead facts sufficient to establish a prima facie disparate treatment claim." *Boykin v. Keycorp*, 521 F.3d 202, 212 (2d Cir. 2008) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-12 (2002)).[3]  Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." *Swierkiewicz*, 534 U.S. at 511.  In *Swierkiewicz*, the Supreme Court held that a discrimination complaint "easily satisfie[d] the requirements of Rule 8(a) because it [gave] respondent fair notice of the basis for petitioner's claims" by "alleg[ing] that he had been terminated on account of his national origin[,] . . . detail[ing] the events leading to his termination, provid[ing] relevant dates, and includ[ing] the ages and nationalities of at least some of the relevant persons involved with his termination." *Swierkiewicz*, 534 U.S. at 514.  This remains the proper pleading standard in the Second Circuit for Title VII claims, even after the Supreme Court's decision in *Twombly* and *Iqbal*.  *See Boykin*, 521 F.3d at 213 (noting that the Supreme Court decision in *Twombly* "affirmed the vitality of *Swierkiewicz*") (citing *Twombly*, 550 U.S. at 569-70); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d Cir. 2010) (noting that *Iqbal* "reiterated much of the discussion in *Twombly* and rejected as insufficient a pleading that the *Iqbal* Court regarded as entirely conclusory," and "reject[ing] [the defendant's] contention that *Twombly* and *Iqbal* require the pleading of specific

---

[3]     The Circuit has explained that a plaintiff is not required to plead "specific facts establishing a prima facie case of discrimination" because that standard, articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), "is an evidentiary standard, not a pleading requirement, and that to require more than Rule 8(a)'s 'simplified notice pleading standard' would unjustifiedly impose a heightened pleading requirement on the plaintiff."  *Boykin*, 521 F.3d at 212 (quoting *Swierkiewicz*, 534 U.S. at 508, 510, 512-13) (internal quotation marks omitted).

evidence of extra facts beyond what is needed to make the claim plausible").[4]  Thus, "civil rights complaints alleging racial animus" are "sufficiently pled when the complaint stated simply that the plaintiffs were African-Americans, described the defendants' actions in detail, and alleged that defendants selected plaintiffs for maltreatment solely because of their color."  *DiPetto v. U.S. Postal Serv.*, 383 Fed. Appx. 102, at *1 (2d Cir. July 12, 2010) (quoting *Phillip v. Univ. of Rochester*, 316 F.3d 291, 298 (2d Cir. 2003)) (internal alterations and quotation marks omitted).

Here, plaintiff has alleged that he is African-American and that he was "subjected to unusually slow processing of customer loan applications as compared to Horowitz and others which adversely affected the timing and diminished the amount of his payout under his compensation and/or commission structure as compared to Horowitz."  (Am. Compl. ¶ 66(l).) Plaintiff has further alleged that this "continuing pattern of extremely slow turnarounds" lasted into May 2008 and beyond, and that, despite his requests, he received no assistance from Horowitz and other members of "senior branch management."  (*Id.* ¶ 74.)  Moreover, plaintiff has alleged that "others," including Horowitz, were not subjected to the same slow processing problems, and that this conduct negatively effected plaintiff's "production performance" and, by extension, his compensation.  (*Id.* ¶¶ 66(l), 74.)  Finally, plaintiff has alleged that this conduct was racially motivated.  (*Id.* ¶ 91.)  The Court finds it plausible to infer that this conduct, which is alleged by plaintiff to have negatively impacted his work performance and resulting

---

[4]      *But see Schwab v. Smalls*, 435 Fed. Appx. 37, 40 (2d Cir. July 27, 2011) (unpublished) (noting that "[q]uestions have been raised . . . as to *Swierkiewicz*'s continued viability in light of *Twombly* and *Iqbal*," but declining to address the question because the complaint "alleges facts sufficient to state a claim of employment discrimination . . . under both the *Swierkiewicz* standard and the more demanding *McDonnell Douglas*-based approach adopted by the district court").

compensation, "was a materially significant disadvantage with respect to the terms of [plaintiff's] employment." *See La Grande v. DeCrescente Distrib. Co., Inc.*, 370 Fed. Appx. 206, 211 (2d Cir. Mar. 23, 2010). Thus, defendant's motion to dismiss plaintiff's Title VII claim against Countrywide based on this allegation of discrimination is denied.[5]

Plaintiff's other timely allegations of discriminatory conduct include the May 2008 confrontation between plaintiff and Horowitz, defendants' failure to discipline Horowitz in connection with that confrontation, and the two Written Counseling forms given to plaintiff. None of these allegations describe "a 'materially adverse change' in the terms and conditions of [plaintiff's] employment" sufficient to sustain a Title VII discrimination claim. *See Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (noting that a "materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished responsibilities . . . .") (internal quotation marks omitted); *Gear v. Dep't of Educ.*, 2011 WL 1362093, at *3 (S.D.N.Y. Mar. 30, 2011) (allegations that plaintiff was "summoned to disciplinary meetings" were insufficient to maintain Title VII claim); *Hill v. Children's Vill.*, 196 F. Supp. 2d 389, 397 (S.D.N.Y. 2002) (finding plaintiff's receipt of warning letter, without more, was "insufficient to create a tangible employment detriment").

To the extent the Amended Complaint mentions plaintiff's "constructive discharge," (*see, e.g.,* Am. Compl. ¶ 119), the Court finds that plaintiff has not adequately pled such a claim; the Amended Complaint does not contain a single allegation as to the circumstances surrounding the

---

[5]     Plaintiff's Title VII claims are asserted against Countrywide only, and are not asserted against the Individual Defendants. (*See* Am. Compl. ¶¶ 119-121; Pl.'s Opp'n at 21 n.9 (acknowledging that individuals generally may not be held liable under Title VII).)

17

cessation of plaintiff's employment.  Thus, plaintiff's remaining Title VII discrimination claims are dismissed.

## IV.    *Plaintiff's Title VII Retaliation Claims*

### A.    *Timeliness of Plaintiff's Title VII Retaliation Claims*

With respect to plaintiff's retaliation claims under Title VII, it is clear that for statute of limitations purposes, the clock begins to run at the time the adverse employment action occurred – not when the plaintiff engaged in the underlying protected activity.  *See Harris v. S. Huntington Sch. Dist.*, 2009 WL 875538, at *9 (E.D.N.Y. Mar. 30, 2009) ("Although plaintiff's complaints which form the basis of his retaliation claim occurred more than three years prior to the expiration of the relevant statute of limitations period, the point of accrual is not when plaintiff utters the alleged protected speech, but rather when he suffers the retaliatory action as a result of that speech.").  Thus, as set forth above, only alleged retaliatory conduct that occurred after January 3, 2008 is actionable.

### B.    *Legal Sufficiency of Plaintiff's Title VII Retaliation Claims*

Title VII contains an anti-retaliation provision which makes it unlawful for an employer to "discriminate against" any employee because that employee "has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, a plaintiff must show: "(1) that [he] participated in protected activity, (2) that [he] suffered an adverse employment action, and (3) that there was a causal connection between [his] engaging in the protected activity and the adverse employment action."  *Gorzynski v. Jet Blue Corp.*, 596 F.3d 93, 110 (2d Cir. 2010).  As with discrimination claims, however, plaintiff is not required to plead facts sufficient to establish a prima facie case of Title

VII retaliation in order to survive a Rule 12(b)(6) motion to dismiss.  *See Williams v. N.Y. City Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) ("The *Swierkiewicz* holding applies with equal force to any claim, including retaliation claims . . ., that the *McDonnell Douglas* framework covers.")  Rather, "the ordinary rules for assessing the sufficiency of a complaint apply."  *Swierkiewicz*, 534 U.S. at 511.  "Though not required to plead the elements of a prima facie case, the complaint must still nudge plaintiff's claims across the line from conceivable to plausible to survive [a] motion to dismiss."  *Flores v. N.Y. City Human Res. Admin.*, 2011 WL 3611340, at *8 (S.D.N.Y. Aug. 16, 2011) (internal alterations and quotation marks omitted, alteration added).

### 1.   Protected Activity

Defendants not appear to assert that plaintiff's November 28, 2007 internal complaint, which "concern[ed] the discriminatory conduct and racial bias to which [plaintiff] was subjected," (Am. Compl. ¶ 66(i)), did not constitute protected activity under Title VII's anti-retaliation provision.  Defendants do argue, however, that the December 18, 2007 internal complaint "did not allege inequitable treatment based on race, and therefore, does not qualify as a protected activity under Title VII."  (Defs.' Mem. at 15.)  Plaintiff has alleged that the December 18, 2007 internal complaint "referenc[ed] Purschke's inequitable application of compensation practices," (Am. Compl. ¶ 72), i.e., Purschke's refusal to increase plaintiff's compensation to a rate commensurate with the compensation paid to a Caucasian subordinate employee (*id.* ¶¶ 66(k), 70), and Purschke's refusal to increase plaintiff's commission basis points (a "material component" of plaintiff's compensation package) to a level consistent with the basis points approved for Horowitz (*id.* ¶¶ 64, 71).  Thus, plaintiff has adequately pled that the December 18, 2007 internal complaint alleged discriminatory treatment based upon race.

19

2.     **Adverse Employment Actions and Causal Connection**

Plaintiff has alleged that several retaliatory adverse employment actions were taken against him: (1) plaintiff's loss of his Branch Manager position at the Massapequa Park branch and his subsequent demotion to a Sales Manager position; (2) the May 8, 2008 confrontation between Horowitz and plaintiff, and defendants' subsequent failure to discipline Horowitz for screaming and cursing at plaintiff (Am. Compl. ¶ 73); (3) the deliberate slowdowns plaintiff experienced in connection with customer loan processing, which ultimately detrimentally impacted plaintiff's compensation, and for which Horowitz and other members of "senior management" provided no assistance to plaintiff (*id.* ¶¶ 66(l), 74); (4) the Written Counseling dated May 7, 2008 (*id.* ¶ 76); and (5) the modified Written Counseling given to plaintiff on July 29, 2008 (*id.* ¶ 78.)

a.     *Plaintiff's Demotion*

Defendants assert that plaintiff's alleged demotion from Branch Manager of the Massapequa Park branch to a Sales Manager position occurred prior to January 3, 2008 and, as such, any retaliation claim "associated" with that demotion is time-barred.  (*See* Defs.' Mem. at 15.)  The Court agrees and, therefore, any Title VII retaliation claims based upon the closing of the Massapequa Park branch, the resulting elimination of plaintiff's Branch Manager position, or plaintiff's alleged demotion to a Sales Manager position are dismissed as untimely.

b.     *May 8, 2008 Confrontation*

Plaintiff has failed to allege that either the May 8, 2008 confrontation with Horowitz or Purschke and Donovan's failure to reprimand Horowitz following the confrontation constitute actionable adverse employment actions.  Title VII's anti-retaliation provision "covers those (and

only those) employer actions that would have been materially adverse to a reasonable employee or job applicant." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Materially adverse actions are those that are "harmful to the point that they could well dissuade a reasonable worker from making or supporting charge of discrimination." *Id.* This definition of "materially adverse" actions "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.* at 64; *see also Hicks v. Baines*, 593 F.3d 159, 165 (2d Cir. 2010) ("Prior decisions of this Circuit that limit unlawful retaliation to actions that affect the terms and conditions of employment no longer represent the state of the law.") (internal citations omitted). The Supreme Court has emphasized, however, that actionable retaliation includes only *materially* adverse actions, as "normally petty slights, minor annoyances, and simple lack of good manners" would not have the deterrent effect that Title VII's anti-retaliation provision seeks to prevent. *White*, 548 U.S. at 68. The "standard for judging harm" to the plaintiff is an objective one, and does not take into account "a plaintiff's unusual subjective feelings." *Id.* at 68-69. Finally, "the significance of any given act of retaliation will often depend on the particular circumstances. Context matters." *Id.* at 69.

Under this standard, the Court finds that neither the May 8, 2008 confrontation itself or Purschke and Donovan's alleged failure to reprimand Horowitz in connection with the confrontation constitute adverse employment actions. Not only would such conduct not dissuade a reasonable worker from making or supporting a charge of discrimination, it appears that following the incident plaintiff himself filed a report of "hostile harassment" against Horowitz (*see* Am. Compl. ¶ 73). Accordingly, plaintiff's Title VII claim based upon the May 8, 2008 confrontation is dismissed.

c.     *Slow Processing of Customer Loan Applications*

As discussed above, plaintiff alleges that he was "subjected to unusually slow processing of customer loan applications," which negatively impacted the timing and amount of his payouts (*id.* ¶ 66(l)), and that following the May 8, 2008 incident, "Horowitz refused and/or failed to assist Plaintiff with any customer loan processing problems including the continuing pattern of extremely slow turnarounds," which further negatively impacted his compensation (*id.* ¶ 74). Applying the *White* standard set forth above, the Court finds that these allegations constitute adverse employment actions.

The Court cannot conclude, however, that plaintiff has adequately pled a causal connection between this alleged conduct and his protected activity.  *See Altieri v. Albany Pub. Library*, 172 Fed. Appx. 331, 333 (2d Cir. Feb. 1, 2006); *Baez v. Visiting Nurse Serv. of N.Y. Family Care Serv.*, 2011 WL 5838441, at *6 (S.D.N.Y. Nov. 21, 2011) ("[P]laintiff's retaliation claim . . . must fail because she alleges no facts from which a causal connection between her [protected activity] and her termination . . . may be inferred.").  The Court cannot determine from the allegations in the Amended Complaint whether the "continuing pattern of extremely slow turnarounds" began before or after plaintiff filed his November and/or December 2007 internal complaints.  Obviously, if these slow turnarounds began prior to plaintiff's engaging in protected activity, they cannot form the basis of a Title VII retaliation claim.  *See Dansler-Hill v. Rochester Inst. of Tech.*, 764 F. Supp. 2d 577, 582 (W.D.N.Y. 2011) ("The crux of any retaliation claim is a cause-and-effect relationship whereby protected activity *precedes, and gives rise to,* an adverse employment action.") (emphasis added).  Moreover, based upon the allegations in the Amended Complaint, the Court cannot reasonably infer that Horowitz's refusal to assist plaintiff with this

22

slow turnaround problem came as a result of plaintiff's protected activity – as opposed to resentment lingering after the May 8, 2008 confrontation.  (*See* Am. Compl. ¶ 74.)  Accordingly, plaintiff's retaliation claims based upon the alleged pattern of slow turnarounds and Horowitz's failure to rectify that pattern are dismissed.

### d.    The Written Counselings

Defendants contend that, "as a matter of law . . . warnings are not considered adverse employment actions under Title VII."  (Defs.' Mem. at 15.)  Although the Court does not necessarily agree with this statement,[6] it need not decide the issue because plaintiff's allegations that the Written Counselings were issued in retaliation for his protected activity suffers from a more fundamental flaw:  the necessary causal connection appears entirely absent.  In fact, the Amended Complaint itself actually alleges that the Written Counselings were issued for other reasons, as described below.

Plaintiff alleges that the May 7, 2008 Written Counseling, which "subject[ed] Plaintiff to potential further disciplinary action . . . up to any including termination," was drafted based upon Horowitz's complaint that plaintiff "referred a walk-in customer to his subordinate."  (Am. Compl. ¶ 77.)  According to plaintiff, such a referral "is a function of [his] job responsibility to

_____

[6]    As the Second Circuit has made clear post-*White*, "*the only* consideration" is "whether the employer's actions were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Hicks*, 593 F.3d at 169 (emphasis in the original, internal quotation marks and alteration omitted).  In *Hicks*, for example, the Second Circuit held that the plaintiff's claim of workplace sabotage constituted an adverse employment action: "A reasonable employee in plaintiff's position may well be dissuaded from participating in a discrimination investigation or proceeding if he knew that in retaliation, he would be disciplined (though innocent) for failing to arm a security system that is needed to protected vulnerable residents . . . ."  *Id.* at 170.

23

support his sales staff" and is not an appropriate basis for discipline.[7]  (*Id.* ¶ 78.)  Plaintiff asserts

that Horowitz "instigat[ed]" the Written Counseling "in an effort to threaten and dissuade

Plaintiff from making complaints about Horowitz to the company."  (*Id.*)  A closer inspection of

the allegations in the Amended Complaint reveals, however, that, if anything, Horowitz intended

the May 7, 2008 Written Counseling to dissuade plaintiff from making complaints about

Horowitz's breach of company policies – not complaints about unlawful race discrimination.

Plaintiff alleges that the May 7, 2008 Written Counseling was issued on the heels of plaintiff's

filing of another internal complaint that alleged that Horowitz had violated Countrywide

regulations prohibiting the appearance of a conflict of interest by extending a favorable rate lock

to a certain customer.  (*Id.* ¶ 76.)  Given this allegation, the Court cannot plausibly infer the

existence of the necessary causal connection between plaintiff's protected activity and the May 7,

2008 Written Counseling.

Similarly, plaintiff alleges that the July 29, 2008 Written Counseling was meant "to

dissuade Plaintiff from helping a subordinate salesman increase such subordinate's loan

production," (*id.* ¶ 78), not to dissuade plaintiff from making complaints of discrimination.  In

addition, the passage of time between the protected activity (which occurred in November and

December 2007) and both Written Counselings – between approximately six and eight months –

militates against an inference of retaliation being drawn from the pleadings.  *See Ragin v. E.*

*Ramapo Cent. Sch. Dist.*, 2010 WL 1326779, at *24 (S.D.N.Y. Mar. 31, 2010) ("[M]any courts

in this circuit have held that periods of two months or more defeat an inference of causation.")

---

[7]      In fact, plaintiff was later notified that six of the eight items complained of in the
May 7, 2008 Written Counseling were removed.  (Am. Compl. ¶ 77.)

(collecting cases); *Reyes v. City Univ. of N.Y.*, 2007 WL 2186961, at \*5 (S.D.N.Y. July 26, 2007)

("It is well settled in this Circuit that the protected activity must be followed closely by

discriminatory treatment and it is equally well settled that more than three or four months does

not qualify as following closely.") (internal citations, quotation marks, and alterations omitted).

Thus, plaintiff's retaliation claims based upon the Written Counselings are dismissed.

**V.    *Plaintiff's Title VII Hostile Work Environment Claims are Dismissed***

Defendants assert that plaintiff did not include any Title VII hostile work environment

claims in the Charge filed with the SDHR and, therefore, such claims should be dismissed as

unexhausted.  (*See* Defs.' Mem. at 12-13.)  Plaintiff argues that his hostile work environment

claims are "reasonably related" to the claims contained in the Charge.  (*See* Pl.'s Opp'n at 19-

20.)

While "[e]xhaustion is ordinarily an essential element of a Title VII claim," any claims

that are "not raised in an EEOC complaint . . . may be brought in federal court if they are

reasonably related to the claim filed with the agency."  *Williams v. N.Y. City Hous. Auth.*, 458

F.3d 67, 70 (2d Cir. 2006) (internal quotation marks omitted).  The Second Circuit has

recognized three situations in which claims raised for the first time in a federal lawsuit would be

considered "reasonably related" to those contained in an administrative charge: "1) where the

conduct complained of would fall within the scope of the EEOC investigation which can

reasonably be expected to grow out of the charge of discrimination; 2) where the complaint is

one alleging retaliation by an employer against an employee for filing an EEOC charge; and 3)

where the complaint alleges further incidents of discrimination carried out in precisely the same

25

manner alleged in the EEOC charge." *Terry v. Ashcroft*, 336 F.3d 128, 151 (2d Cir. 2003) (internal quotation marks omitted).

Here, plaintiff argues that his hostile work environment claims fall within the first exception, which has been described by the Second Circuit as "essentially an allowance of loose pleading and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [to be] suffering." *Deravin*, 335 F.3d at 201 (internal quotation marks omitted). According to plaintiff, even though he "failed to articulate that" the conduct alleged in the Charge "was also 'sufficiently persistent and repetitive,' Plaintiff is a lay person who set forth examples of discriminatory conduct that is necessarily part of a continuing practice and policy.'" (Pl.'s Opp'n at 20.)

To determine whether plaintiff's hostile work environment claims are reasonably related to those claims contained in the Charge, "the focus should be on the factual allegations made in the [SDHR] charge itself, describing the discriminatory conduct about which a plaintiff is grieving." *Mathirampuzha v. Potter*, 548 F.3d 70, 76 (2d Cir. 2008) (internal quotation marks omitted); *see also Barriera v. Bankers Trust*, 2003 WL 22387099, at *4 (S.D.N.Y. Oct. 20, 2003). Having examined the Charge, the Court concludes that the hostile work environment claim asserted in this action is not reasonably related to the alleged conduct contained in the Charge. Such a claim does not fall within the scope of the SDHR investigation that could reasonably be expected to grow out of the Charge because the alleged conduct set forth in the Charge "do[es] not provide any basis for claiming a hostile work environment as defined by case law." *Parekh v. Swissport Cargo Servs., Inc.*, 2009 WL 290465, at *4 (E.D.N.Y. Feb. 5, 2009).

In order to make out a hostile work environment claim, a plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks omitted). The "very nature" of a hostile work environment claim "involves repeated conduct" that "occurs over a series of days or perhaps years," such that "claims are based on the cumulative effect of individual acts." *Morgan*, 536 U.S. at 115.

In the Charge, plaintiff alleged that he was demoted from a Branch Manager to Sales Manager position, that the new Branch Manager "fabricated complaints which were supported by HR then removed," and that "other minority branch managers were demoted or fired while all non minority managers retained their positions." (Defs.' Ex. B at 5.) Plaintiff did not "reference [ ] repeated conduct or the cumulative effect of individual acts." *See Mathirampuzha*, 548 F.3d at 77. The Charge did not contain any allegations of "personal attacks and harassing comments directed at the plaintiff," or any other "suggestion of hostility or offensiveness." *See Parekh*, 2009 WL 290465, at *4. In sum, the Court concludes that the allegations in the Charge were insufficient to put the SDHR on notice that they should investigate a race-based hostile work environment claim. Accordingly, plaintiff's hostile work environment claims are not "reasonably related" to the claims contained in the Charge, and defendants' motion to dismiss those claims is granted.

## VI.    *Plaintiff's NYHRL Claims are Dismissed*

Defendants assert that plaintiff's NYHRL discrimination and retaliation claims "are

barred and subject to dismissal for lack of subject matter jurisdiction" pursuant to the election of

remedies doctrine set forth in the NYHRL.  Section 297(9) of the NYHRL provides:

> Any person claiming to be aggrieved by an unlawful discriminatory
> practice shall have a cause of action in any court of appropriate
> jurisdiction for damages, . . . *unless such person had filed a complaint*
> *hereunder or with any local commission on human rights*, . . .
> provided that, where the [SDHR] has dismissed such complaint on
> the grounds of administrative convenience, on the grounds of
> untimeliness, or on the grounds that the election of remedies is
> annulled, such person shall maintain all rights to bring suit as if no
> complaint had been filed with the division.

N.Y. Exec. Law § 297(9) (emphasis added).  The application of the NYHRL's election of

remedies provision would divest this Court of jurisdiction over plaintiff's NYHRL claims.  *See*

*McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 74 n.3 (2d Cir. 2010) (quoting *Moodie v. Fed.*

*Reserve Bank of N.Y.*, 58 F.3d 879, 884 (2d Cir. 1995)).  Defendants' assertion that this Court

lacks subject matter jurisdiction over plaintiff's NYHRL claims is therefore properly analyzed

pursuant to Rule 12(b)(1).  *See MacEntee v. IBM*, 783 F. Supp. 2d 434, 447 (S.D.N.Y. 2011).

The Court may resolve a Rule 12(b)(1) motion by "refer[ring] to evidence outside the pleadings."

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  "A plaintiff asserting subject

matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists."

*Id.*

Under the NYHRL election of remedies rule, "a claim 'once brought before the [SDHR],

may not be brought again as a plenary action in another court.'" *MacEntee*, 783 F. Supp. 2d at

447 (quoting *York v. Ass'n of Bar of City of N.Y.*, 286 F.3d 122, 127 (2d Cir. 2002)) (alteration

added).  After the SDHR renders a decision on a charge of discrimination, a plaintiff's only

recourse is to "appeal the decision to the Supreme Court of the State of New York." *Ganthier v.*

*N. Shore-Long Island Jewish Health Sys., Inc.*, 345 F. Supp. 2d 271, 282 (E.D.N.Y. 2004) (citing

N.Y. Exec. Law § 298).  The statute provides an exception to the election of remedies rule when

the Charge filed with the SDHR is dismissed for administrative convenience, on the grounds of

untimeliness, or on the grounds that the election of remedies is annulled." *See* N.Y. Exec. Law §

297(9).

Here, the Charge filed by plaintiff with the SDHR sets forth the same discrimination and

retaliation claims that he now asserts in the Amended Complaint.  (*See* Defs.' Ex. B.)  Plaintiff

does not dispute that there is "sufficient identity of issue" between the Charge and the Amended

Complaint such that the election of remedies provision "bars the action in court." *See Benson v.*

*N. Shore-Long Island Jewish Health Sys.*, 482 F. Supp. 2d 320, 326 (E.D.N.Y. Apr. 4, 2007)

(internal quotation marks and citation omitted).  It is also undisputed that the SDHR issued a no

probable cause finding based upon a lack of evidence to support plaintiff's discrimination and

retaliation claims.  (Defs.' Ex. C.)

Although not addressed by defendants, the Court notes that the Charge named only

Countrywide Home Loans, Inc. as a respondent, and did not include any of the other defendants

named in this action.  Nevertheless, the Court still lacks jurisdiction over plaintiff's NYHRL

claims against every named defendant in this action, because those claims "are based on the same

facts and incidents raised in the [C]harge." *Benson*, 482 F. Supp. 2d at 326 ("[E]ven though the

complaint names additional parties, because the incidents are identical, this Court lacks

jurisdiction over the Plaintiff's NYSHRL claims against all the Defendants."); *see also El Sayed*

*v. Hilton Hotels Corp.*, 2008 WL 3362828, at *5 (S.D.N.Y. Aug. 7, 2008) ("Because the present claims against [defendants not named in the administrative complaint] are based on the same facts as the administrative complaint filed with the Division, El Sayed is barred from commencing an action against the additional defendants in this Court."); *Lyman v. City of New York*, 1997 WL 473976, at *4 (S.D.N.Y. Aug. 20, 1997) ("The facts that [defendant] Mazar was not named in the [administrative] complaint and that the complaint before this Court includes factual allegations not included in the [administrative] complaint do not change this result, because the present claims are based on the same facts as the claims raised in the [administrative] complaint.").

Because the Court lacks jurisdiction over plaintiff's NYHRL claims, the Fourth and Fifth Causes of Action are dismissed.

## VII.   *Plaintiff's Section 1981 Claims*

Defendants move to dismiss plaintiff's Section 1981 claims, which are asserted against both Countrywide and the Individual Defendants.  (*See* Defs.' Mem. at 16.)  Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ."  42 U.S.C. § 1981(a).  "Section 1981 prohibits intentional race-based discrimination in the workplace."  *Ganthier*, 345 F. Supp. 2d at 281 (citing *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir. 1998)).

### A.     *Appropriate Statute of Limitations*

Defendants assert that plaintiff's Section 1981 claims are subject to a three-year statute of limitations and, since the original Complaint was filed on October 27, 2010, the Court may only

consider alleged conduct occurring on or after October 27, 2007 in assessing the sufficiency of plaintiff's claims.  (*See* Defs.' Mem. at 17.)  Defendants do not, however, cite to *Jones v. R.R. Donnelley & Sons Company*, 541 U.S. 369 (2004), a case which, as discussed below, is of critical importance in determining the appropriate statute of limitations.

Section 1981 was enacted in 1866 and, despite minor modifications made in 1870 and 1874, "its basic coverage did not change prior to 1991." *Jones*, 541 U.S. at 372.  As originally enacted, the statute provided that "'all persons [within the jurisdiction of the United States] shall have the same right, in every State and Territory . . . to make and enforce contracts . . . as is enjoyed by white citizens.'" *Id.* (quoting 14 Stat. 27) (alterations in the original).  Under this version of the statute, "racial harassment relating to the conditions of employment [was] not actionable under § 1981." *Jones*, 541 U.S. at 383 (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 171 (1989)).  The Supreme Court's decision in *Patterson* reflected the view that "the statutory right 'to make and enforce contracts' did not protect against harassing conduct that occurred after the formation of the contract."  *Id.* at 373.

The Civil Rights Act of 1991, which was enacted by Congress in response to *Patterson*, added a new subsection to Section 1981 that defined the term "to make and enforce contracts" to include "'termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* (quoting 42 U.S.C. § 1981(b)).  Under this amended language, claims that stemmed from conduct occurring after the formation of the employment relationship became actionable under Section 1981.  *See id.; see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 405 (E.D.N.Y. 2010).

Prior to enacting the Civil Rights Act of 1991, Congress promulgated 28 U.S.C. § 1658(a), a "catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." *Jones*, 541 U.S. at 371. Initially, there was "some confusion" as to the appropriate limitations period for Section 1981 actions. *See Bishop v. Henry Modell & Co.*, 2009 WL 3762119, at *9 (S.D.N.Y. Nov. 10, 2009). The Supreme Court provided clarification of this issue in *Jones*, where it dealt with the question of whether claims brought under Section 1981, as amended by the Civil Rights Act of 1991, based upon an employee's wrongful termination, denial of transfer, and hostile work environment were subject to the four-year statute of limitations set forth in Section 1658(a), as opposed to the applicable borrowed state statute of limitations. *Jones*, 541 U.S. at 371.

The Court explained that "a cause of action . . . is governed by § 1658's 4-year statute of limitations [ ] if the plaintiff's claim against the defendant was made possible by a post-1990 enactment," and that the plaintiff's employment discrimination claims were "made possible" by the Civil Rights Act of 1991. *Id.* at 382-83 (noting that the Civil Rights Act of 1991 "overturned *Patterson* by defining the key 'make and enforce contracts' language in § 1981 to include the 'termination of contracts, and the enjoyment of all benefits, privilege, terms, and conditions of the contractual relationship"). Accordingly, because the plaintiff's claims "'ar[ose] under' the amendment to § 1981 contained in the 1991 Act," they were subject to the four-year statue of limitations provided under the catch-all statute. *Id.*

Here, given that plaintiff's asserted Section 1981 employment discrimination and retaliation claims were "made possible" by amendments to Section 1981 contained in the Civil Rights Act of 1991, *see id.*; *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 451 (2008) (finding

32

that the Civil Rights Act of 1991 amended Section 1981 in a way that made retaliation claims possible), the Court finds that the applicable statute of limitations is four years. Thus, the Court will consider alleged conduct that occurred on or after October 27, 2006 in evaluating the sufficiency of plaintiff's Section 1981 discrimination and retaliation claims.

### B.      Application to Plaintiff's Section 1981 Discrimination Claims

It is well-settled that "claims brought pursuant to Section 1981 are analyzed under the same standards as Title VII claims." *Ganthier*, 345 F. Supp. 2d at 282 (citing *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 75 (2d Cir. 2000)). "Unlike Title VII, Section 1981 provides for individual liability on the part of non-employers," and so both Countrywide and the Individual Defendants are subject to liability if plaintiff's claims are adequately pled. *See id.*

The Court has already applied the Title VII standard in assessing plaintiff's allegations of discriminatory conduct that occurred after January 3, 2008. Accordingly, for the reasons set forth above, plaintiff's Section 1981 discrimination claims based upon allegations regarding the May 8, 2008 altercation with Horowitz, as well as defendants' subsequent failure to discipline Horowitz, and the Written Counselings are dismissed. However, plaintiff has sufficiently alleged a Section 1981 discrimination claim based upon defendants' imposition of (and/or failure to resolve) a slowdown in the processing of plaintiff's customer loan applications, which negatively impacted his compensation.

Plaintiff has further alleged that the following discriminatory conduct occurred prior to January 3, 2008, but after October 27, 2006: (1) his termination as part of a reduction in force on March 10, 2007; (2) his failed attempt to interview with Turini in March 2007; (3) Donovan's

33

hiring of Horowitz as co-Branch Manager of the Massapequa Park branch in August 2007; (4)

his receipt of unequal compensation as compared to his co-Branch Manager Horowitz; (5)

Donovan and Purschke giving Horowitz "more favorable treatment" than plaintiff; and (6)

Eisenstat's alleged failure to supply plaintiff with acceptable recruits for the Massapequa Park

branch, and Donovan, Purschke and Horowitz's encouragement of such practice by diverting

recruits to non-minority branch managers.

Plaintiff may not maintain a Section 1981 claim based upon his termination in March

2007 because he has alleged only that his position was "eliminated due to a mass reduction-in-

force," and does not allege that his termination was racially motivated.  (*See* Am. Compl. ¶ 22.)

With respect to plaintiff's failed attempt to interview with Turini, plaintiff has alleged only that a

former employee of Turini's "told" plaintiff that "Turini was known to strongly favor the hiring

of Caucasians of Greek [descent] for managerial positions," and that plaintiff's photograph was

available for Turini's inspection via the company's intranet site.  (*See id.* ¶¶ 34, 35.)   These

allegations, standing alone, are simply too speculative to create a plausible inference of race

discrimination.  As such, they must be dismissed.

With respect to plaintiff's discrimination claim based upon Donovan's hiring of Horowitz

to serve as co-Branch Manger, the Court finds that plaintiff has failed to allege "a 'materially

adverse' change" in the terms and conditions of his employment so as to sustain his Section 1981

claim.  Specifically, plaintiff's allegations that Donovan did not consult him before making this

single hiring decision, even though plaintiff "had been clearly delegated full authority for

recruiting new hires for his branch," (Am. Compl. ¶ 47), and that plaintiff was "relegated the lion

share of *ministerial* duties pertaining to Horowitz's hiring, including requisitioning business

cards and stationary and obtaining desk top items for Horowitz," (*id.* ¶ 62), do not rise to the level of "a less distinguished title, a material loss of benefits, [or] significantly diminished responsibilities." *See Galabya*, 202 F.3d at 640. Aside from having to order Horowitz's supplies, plaintiff does not allege that his job duties or responsibilities changed in any way, or that any of his managerial responsibilities were shifted away from him to Horowitz.

Plaintiff's claim that he was paid less than Horowitz during the time they served as co-Branch Managers is sufficient to withstand defendant's motion to dismiss. Plaintiff has alleged that his compensation was lower than Horowitz's even though both men held the same position and plaintiff had a longer tenure with Countrywide as well as superior credentials. (Am. Compl. ¶¶ 59, 63.) Furthermore, plaintiff alleges that this differential treatment was "unlawfully motivated by racial bias." (*Id.* ¶ 60.) Thus, defendant's motion to dismiss plaintiff's Section 1981 claims based upon his unequal pay as compared to Horowitz is denied.

Additionally, plaintiff alleges that he was treated less favorably by Donovan and Purschke as compared to Horowitz because of his race. (*See id.* ¶ 66.) Specifically, plaintiff asserts that Purschke and Donovan did not provide plaintiff the same level of management support that was provided to Horowitz. Mindful that at this stage "it is not necessary for [plaintiff] to successfully plead a prima facie case," the Court finds that he has pled allegations sufficient "to meet the plausibility standard of *Iqbal* and to put [defendants] on notice regarding the claims against which [they] must defend" by "alleging that [he] was given less favorable treatment because of his race." *See Ya-Chen Chen v. City Univ. of N.Y.*, 2011 WL 5419792, at *9 (S.D.N.Y. Nov. 9, 2011).

Finally, plaintiff alleges that Donovan, Purschke, and Horowitz "influenced, encouraged and/or instructed recruiter Eisenstat to assist the Corporate Defendants in the systematic and intentional sabotage of Plaintiff's successful recruiting for his assigned branch . . .by withholding and diverting various recruits from Plaintiff to other non-minority branch managers," even when those recruits were originally scheduled to meet with plaintiff first. (*See* Am. Compl. ¶ 80.) According to plaintiff, if he was not supplied with qualified recruits his "performance outcomes at his assigned branch were systematically positioned to fail." (*Id.* ¶ 86.) Plaintiff has alleged that this treatment was motivated by race. (*Id.* ¶ 87.) As such, plaintiff has sufficiently alleged a Section 1981 discrimination claim.

### C.    Application to Plaintiff's Section 1981 Retaliation Claims

To the extent that plaintiff asserts a retaliation claim (*see* Am. Compl. ¶ 155), such a claim is cognizable under Section 1981. *See CBOCS West, Inc.*, 553 U.S. at 457 (holding that "42 U.S.C. § 1981 encompasses claims of retaliation"). In determining the sufficiency of plaintiff's Section 1981 retaliation claims, the Court applies the standards applicable to plaintiff's Title VII retaliation claims, as set forth above. *See Smith v. Reg'l Plan Ass'n, Inc.*, 2011 WL 4801522, at *5 (S.D.N.Y. Oct. 7, 2011). Thus, to the extent the Court dismissed plaintiff's Title VII retaliation claims, those claims cannot be maintained pursuant to Section 1981.

In examining the Title VII retaliation claims, the Court was restricted to a consideration of alleged conduct occurring on or after January 2, 2008. Given that a four-year statute of limitations applies to plaintiff's Section 1981 retaliation claim, however, the Court may consider conduct that occurred as early as October 2006. Plaintiff alleges that he filed an internal complaint on November 28, 2007, which "concern[ed] the discriminatory conduct and racial bias

to which he was subjected," an action which the Court has already determined constitutes protected activity. (*See* Am. Compl. ¶ 66(i).) The same day, Purschke informed plaintiff that the Massapequa Park branch was being closed, and that his Branch Manager position was being eliminated. (*Id.*) Initially, Purschke did not offer plaintiff the opportunity to take another position within the company, although that option was given to Horowitz. (*Id.* ¶ 66(j).) After plaintiff learned that Horowitz was being transferred to a different branch and was being permitted to retain the title of Branch Manager, plaintiff asked for the same treatment. (*Id.*) Instead, he was demoted to a Sales Manager position, for which he received less compensation and was required to report to Horowitz. (*Id.*) Plaintiff has sufficiently alleged that he engaged in protected activity (i.e., filing the November 2007 internal complaint), he suffered an adverse employment action when his Branch Manager position was eliminated and he was demoted to a Sales Manager position, and – given that these events occurred on the same day – he has sufficiently alleged a causal connection between the two. *See Smith*, 2011 WL 4801522 at *5.

Accordingly, defendant's motion to dismiss plaintiff's Section 1981 retaliation claim based upon his November 2007 demotion is denied.

## VIII.   *Plaintiff's FLSA and NYLL Claims are Dismissed*

Defendants argue that the Amended Complaint "fails to lay any factual foundation" for plaintiff's FLSA and NYLL claims because "[i]t provides no information about the nature, frequency, or duration of [his] allegedly uncompensated work," "[i]t does not state what kind of work is at issue or when the work was allegedly performed," and it does not "allege any specific facts about [plaintiff's] employment, such as his dates of employment (or termination) and pay." (Defs.' Mem. at 21.)

37

Plaintiff alleges that he was "forced to work in excess of forty (40) hours a week on a regular basis while he served in various job capacities including positions that do not fall under the 'exempt' from overtime category" under the FLSA.  (Am. Compl. ¶ 103; *see also id.* ¶ 165.) Specifically, plaintiff alleges that in connection with his "loan processing efforts," he was required to "devote time beyond the regular business day to contact customers, follow up on loan referrals, and handle paperwork and mandatory loan documentation relative thereto."  (*Id.* ¶ 104.) According to plaintiff, he was denied overtime pay "between the period of January 1, 2008 through and including March 23, 2009."  (*Id.* ¶ 170.)

 "Both the FLSA and NYLL require that a complaint state more than vague legal conclusions to survive a [Rule] 12(b)(6) motion." *Nakahata v. New York-Presbyterian Health-Care Sys.*, 2011 WL 321186, at *4 (S.D.N.Y. Jan. 28, 2011).[8] "At a minimum, it must set forth the approximate number of unpaid [ ] overtime hours allegedly worked." *Id.* (citing *Nichols v. Mahoney*, 608 F. Supp. 2d 526, 548 (S.D.N.Y. 2009); *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 628 (S.D.N.Y. 2007)). "'Simply stating that Plaintiffs were not paid for overtime work does not sufficiently allege a violation of Section 7 of the FLSA.'" *Id.* (quoting *Acosta v. The Yale Club of New York City*, 1995 WL 600873, at *4 (S.D.N.Y. Oct. 12, 1995)).

Although plaintiff has identified a fourteen-month time period during which he was allegedly not properly paid overtime compensation, he has failed to include other factual allegations necessary to sustain his FLSA and NYLL claim.  He has not specified the "various"

---

[8]      The Court presumes that plaintiff is attempting to assert a claim for unpaid overtime compensation under both the FLSA and NYLL, even though the sections of the NYLL cited by plaintiff in the Amended Complaint are inapposite and do not support such a claim.  (*See* Am. Compl. ¶ 168 (citing N.Y. Lab. Law § 190 (setting forth statutory definitions), § 193 (prohibiting deductions from wages), § 198 (governing costs and remedies).)

positions he was working in at the time he was allegedly denied overtime compensation, explained whether those positions were, in fact, exempt, or set forth the number of hours he allegedly worked without overtime compensation.  Plaintiff has done little more than assert, in vague and conclusory manner, his entitlement to overtime compensation under the FLSA and NYLL, and this is insufficient to withstand a motion to dismiss.[9]  *See Sampson v. Medisys Health Network, Inc.*, 2011 WL 579155, at *4 (E.D.N.Y. Feb. 8, 2011); *Nakahata*, 2011 WL 321186 at *4.

## IX.    *Plaintiff's Breach of Contract Claim is Dismissed*

Plaintiff asserts that "[d]uring the course of [his] employment," he and Countrywide "entered into certain contracts setting forth [ ] commissions and other elements of [his] compensation."  (Am. Compl. ¶ 172; *see also id.* ¶ 98.)  According to plaintiff, "[e]ach of such contracts was based on a particular agreed compensation package promised to Plaintiff thereunder in payment and consideration for his loan production services."  (*Id.*; *see also* ¶ 99.)  Plaintiff asserts that defendants breached these contracts by, *inter alia*, "delaying and refusing to recognize Plaintiff's labors, in delaying the timing and processing of Plaintiff's pending customer loans, in failing to provide the company's . . . management support that was integral to Plaintiff's performance, [and] in engaging in conduct that was designed to prevent Plaintiff from receiving the full compensation he was promised under said contracts . . . ."  (*Id.* ¶ 174.)

---

[9]      To the extent the Amended Complaint can be read as asserting a claim for "unpaid wages, commissions and bonuses" (*see* Am. Compl. ¶ 163), such a claim will be treated as part of plaintiff's state law claims for breach of contract and unjust enrichment.  *See DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 508 n.4 (E.D.N.Y. 2011).

Defendants argue that plaintiff's breach of contract claim must be dismissed due to plaintiff's failure to identify the agreements or contracts at issue.  (Defs.' Mem. at 22.)  Plaintiff responds that defendants are simply "feign[ing] misunderstanding regarding these contracts, despite the fact that Defendants are or should be in possession of its company contracts."  (Pl.'s Opp'n at 22 n.10.)  In defendants' view, plaintiff has failed to "attach or identify any supposed written contracts between him and [Countrywide]," and has thus failed to give defendants sufficient notice of his claim.

"To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages."  *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  "While these elements need not be separately pleaded, failure to allege them will result in dismissal."  *Tray-Wrap, Inc. v. Veneman*, 2004 WL 2346619, at *3 (S.D.N.Y. Oct. 18, 2004).

Only the first element is at issue here.  "In order to adequately allege the existence of an agreement, a plaintiff must plead the provisions of the contract upon which the claim is based."  *Howell v. Am. Airlines, Inc.*, 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006) (internal quotation marks omitted).  "A plaintiff need not attach a copy of the contract to the complaint or quote the contractual provisions verbatim."  *Id.* (citations omitted).  "However, the complaint must at least set forth the terms of the agreement upon which liability is predicated by express reference."  *Id.* (internal quotation marks and alteration omitted).

Here, plaintiff has not specifically identified the contract (or contracts) at issue and has not specified the terms of the agreement that defendant purportedly breached, other than to assert

40

that these "certain contracts" set forth "the commissions and other elements of compensation to be paid to Plaintiff." (Am. Compl. ¶ 172.) Because plaintiff has failed to plead an essential element of his breach of contract claim, defendants' motion to dismiss that claim is granted.[10] *See Howell*, 2006 WL 3681144 at *4; *Tray-Wrap, Inc.*, 2004 WL 2346619 at *4.

## X.    *Plaintiff's Unjust Enrichment Claim*

To maintain an unjust enrichment claim in New York, a plaintiff must allege "that the defendant received a benefit at the plaintiff's expense and that retention of that benefit would be unjust." *Levion v. Societe Generale*, 2011 WL 4549458, at *13 (S.D.N.Y. Sept. 30, 2011). Plaintiff alleges, apparently as an alternative to his breach of contract claim, that defendants "benefitted" from him "by virtue of and in payment and consideration for his loan production services," and he seeks "restitution" in the form of "all earned commissions due and owing as a result of [plaintiff's] . . . loan production services." (Am. Compl. ¶¶ 180, 181.) Several courts within this Circuit have held that "a plaintiff may not allege that his former employer was 'unjustly' enriched at his expense when the employer compensated the plaintiff by paying him a salary." *Levion*, 2011 WL 4549458 at *13 (citing *Karmilowicz v. The Hartford Fin. Servs. Grp.*, 2011 WL 2936013, at *12 (S.D.N.Y. July 14, 2011)). Rather, a plaintiff must allege that he performed work that "exceeded the scope of his duties" in his position and, therefore, "his salary did not constitute reasonable value for the services he provided to [his employer]." *Id.*; *see also Hughes v. Standard Chartered Bank, PLC*, 2010 WL 1644949, at *8 (S.D.N.Y. Apr. 14, 2010) ("Because plaintiff has failed to allege that the compensation that he received did not constitute

---

[10]    Plaintiff implies that he has copies of relevant written agreements in his possession. (*See* Pl.'s Opp'n at 22 n.20.) As is set forth more further below, plaintiff will be given an opportunity to request leave to move to amend the Amended Complaint.

reasonable value for the services that he provided to [his employer], he has failed to state a claim for unjust enrichment.")

Here, plaintiff has failed to allege that he performed work that exceeded the scope of his duties in any of the positions he held with Countrywide, and he has further failed to allege that his salary did not provide reasonable value for the services he provided to Countrywide. Accordingly, plaintiff's unjust enrichment claim is dismissed.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss the Amended Complaint is granted in part and denied in part. Plaintiff's Title VII retaliation and hostile work environment claims are dismissed in their entirety, as are plaintiff's NYHRL claims. Plaintiff's claims under Section 1983, FLSA, and the NYLL are also dismissed in their entirety. Finally, plaintiff's state law claims for breach of contract and unjust enrichment are dismissed in their entirety.

With respect to plaintiff's Title VII discrimination claims, defendants' motion is denied as to claims against Countrywide stemming from the alleged slow processing of plaintiff's customer loan applications, but is otherwise granted. Defendants' motion to dismiss plaintiff's Section 1981 discrimination claims is denied as to claims based upon: (1) the alleged slow processing of plaintiff's customer loan applications, (2) plaintiff's unequal pay as compared to Horowitz while they were co-Branch Managers, (3) the less favorable treatment afforded to plaintiff by Donovan and Purschke as compared to Horowitz, and (4) Donovan and Purschke's alleged attempts to sabotage plaintiff's receipt of satisfactory recruits to the Massapequa Park branch. Plaintiff's remaining Section 1981 discrimination claims are dismissed. Finally, with

respect to plaintiff's Section 1981 retaliation claims, defendants' motion to dismiss is denied as to claims based upon plaintiff's November 2007 demotion, but is granted in all other respects.

Although plaintiff has not specifically requested leave to further amend the Amended Complaint, he will be given one opportunity to submit a pre-motion conference letter requesting leave to amend the Amended Complaint to cure (to the extent possible) the deficiencies described above. Such pre-motion conference letter shall be submitted within thirty (30) days of the date of this Order. The Court declines defendants' invitation to dismiss the remaining allegations in the Amended Complaint "as prolix." (*See* Defs.' Mem. at 24-25.) The Court does expect that, to the extent plaintiff seeks and is granted leave to file a Second Amended Complaint, such pleading will conform to Rule 8.

**SO ORDERED.**

Dated: Central Islip, New York
      February 2, 2012
                                                                        /s/
                                                                  Denis R. Hurley
                                                                  Unites States District Judge