UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------ X

JOSEPH C. JAMES,                                   :

              Plaintiff,              :     INDEX NO. 10-cv-4953

     -against-                               :

COUNTRYWIDE FINANCIAL CORP.,          **MEMORANDUM OF LAW IN**
COUNTRYWIDE HOME LOANS, INC.,         **OPPOSITION TO PLAINTIFF'S MOTION**
BANK OF AMERICA CORP., ROBERT         : **TO AMEND THE AMENDED**
DONOVAN, WILLIAM PURSCHKE and         **COMPLAINT**
SCOTT HOROWITZ,                                   :

            Defendants.            :

------------------------------------ X

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND PROCEDURAL BACKGROUND ............................................. 1

II.  STANDARD OF REVIEW ................................................................................... 3

III. ARGUMENT ................................................................................................... 3

    A.   It Would be Futile To Grant James' Motion To Amend
        Because The Proposed Second Amended Complaint Does
        Not Conform To Rule 8, In Direct Violation of This Court's
        Explicit Directive ............................................................................................. 3

    B.   The "More Specific Facts And Details" Allegedly Included In The
        SAC Do Not Remedy The Deficiencies Identified By The Court When
        It Dismissed The Majority Of James' Title VII And § 1981
        Discrimination And Retaliation Claims ................................................................ 7

        1.   James Has Not Remedied The Deficiencies That Warranted
            Dismissal Of His Title VII Claims ......................................................... 7

            a.   James Cannot Resurrect A Hostile Work Environment
                Claim Because He Did Not Exhaust His Administrative
                Remedies And Fails To Plead An Actionable Claim
                For Relief ................................................................................ 8

            b.   James' Title VII Retaliation Claim Fails For The Very Same
                Reasons That Warranted Dismissal Of The Amended Complaint,
                And Because Any Newly Pleaded Allegations Fail To State
                A Plausible Claim For Relief ...................................................... 9

                i.   James Has Not Alleged Any Facts Establishing A
                    Casual Connection Between His Alleged Protected
                    Activities And His Performance Improvement Plan,
                    And The Denial Of His Request To Bring His Sales
                    Team With Him Upon His Voluntary Branch Transfer ..... 11

                ii.   James Fails To State A Claim For Post-Employment
                   Retaliation .......................................................................... 14

            c.   James Has Not Remedied The Legal Or Factual Deficiencies
                 That Warranted Dismissal Of His Title VII Race
                Discrimination Claims, Including Any Claim For
                Constructive Discharge .............................................................. 15

2.     The SAC Does Not Cure The Deficiencies Identified By This Court In Dismissing The Majority Of James' Section 1981 Discrimination And Retaliation Claims......................................................18

a.     James' Section 1981 Retaliation Claims Fail For The Same Reasons As His Title VII Retaliation Claims ......................20

C.     It Would Be Futile To Allow James To Re-Plead A Breach Of Contract Claim ........................................................................................20

1.     James Cannot Maintain A Breach Of Contract Claim Simply By Attaching And Referencing All Alleged Workplace Agreements Between Himself And Countrywide.........................................................21

2.     James Cannot Succeed On A Breach Of Contract Claim Premised On His Underlying Allegations Of Discrimination .................23

D.     The SAC Fails To Supplement James' Conclusory Unjust Enrichment Claim With Facts Sufficient To State A Claim For Relief ...............24

E.     James Has Not Sufficiently Remedied The Deficiencies Identified By This Court In Support of Its Dismissal Of The NYLL Claims.............................25

F.     James' Request For Initial Discovery Order Is Pre-Mature And Discovery Should Commence Only After This Court Has Affirmatively Determined Which Claims Are Viable, And After Defendants Have Been Given The Opportunity To Answer Any Amended Pleading That Ultimately Is Allowed By The Court, If At All .........................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Altieri v. Albany Public Library,
   172 Fed. Appx. 331 (2d Cir. 2006) ....................................................................15

Barbata v. Latamie,
   2012 WL 1986981 (S.D.N.Y. June 4, 2012) ........................................................3

Barton v. Mikelhayes,
   2010 U.S. Dist. LEXIS 23789 (N.D.N.Y. Mar. 15, 2010) ...................................8

Birkholz v. City of New York,
   2012 WL 580522 (E.D.N.Y. Feb. 22, 2012) .......................................................17

Carmody v. Village of Rockville Centre,
   661 F. Supp. 2d 299 (E.D.N.Y. 2009) ................................................................24

Collette v. St. Luke's Roosevelt Hospital,
   2002 WL 31159103 (S.D.N.Y. Sept. 26, 2002) .............................................11, 13

Del Plato v. Meyeroff,
   2008 WL 398547 (W.D.N.Y. Feb. 12, 2008) ......................................................28

DeSilva v. North Shore-Long Island Jewish Health System, Inc.,
   770 F. Supp. 2d 497 (E.D.N.Y. 2011) ................................................................26

Diez v. Washington Mutual Bank,
   2011 WL 4434062 (E.D.N.Y. Sept. 21, 2011) .................................................4, 28

Dunn v. Albany Medical College,
   2010 WL 2326127 (N.D.N.Y. June 7, 2010) ........................................................4

Fattoruso v. Hilton,
   2012 WL 2102394 (S.D.N.Y. June 11, 2012) .....................................................13

Fitzgerald v. Kellner, et al.,
   2006 U.S. Dist. LEXIS 79877 (N.D.N.Y. Oct. 31, 2006) .....................................4

Foster v. Humane Society of Rochester,
   724 F. Supp. 2d 382 (W.D.N.Y. 2010) ...........................................................11, 13

Howell v. American Airlines, Inc.,
   2006 WL 3681144 (E.D.N.Y. Dec. 11, 2006) .....................................................21

Hyunmi Son v. Reina Bijoux, Inc.,
    823 F. Supp. 2d 238 (S.D.N.Y. 2011).......................................................................8

In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,
    218 F.R.D. 76 (S.D.N.Y. 2003) ...................................................................4, 5, 6

Infanti v. Scharpf,
    2008 WL 2397607 (E.D.N.Y. June 10, 2008) ...........................................4

James v. Countrywide Financial Corp.,
    2012 WL 359922 (E.D.N.Y. Feb. 2, 2012)................................................... passim

Male v. Tops Markets, LLC,
    2010 WL 4319769 (W.D.N.Y. Oct. 29, 2010) ......................................14

Martin v. State University of New York,
    704 F. Supp. 2d 202 (E.D.N.Y. 2006) ..................................................24

Murdaugh v. City of New York,
    2011 WL 798844 (S.D.N.Y. March 8, 2011) .........................................17

Okon v. Appia,
    2008 U.S. Dist. LEXIS 42412 (E.D.N.Y. May 29, 2008) ........................9

Ony, Inc. v. Cornerstone Therapeutics, Inc.,
    2012 WL 1835671 (W.D.N.Y. May 18, 2012).........................................3

Owens v. Shields,
    34 Fed. Appx. 33 (2d Cir. 2002) ..............................................................6

Parekh v. Swissport Cargo Services, Inc.,
    2009 U.S. Dist. LEXIS 8543 (E.D.N.Y. Feb. 5, 2009)....................8, 9, 16

Prezzi v. Berzak,
    57 F.R.D. 149 (S.D.N.Y. 1972) ................................................................4

Ragin v. East Ramapo Central School District,
    2010 WL 1326779 (S.D.N.Y. March 31, 2012) ....................................12

Roberto's Fruit Market, Inc. v. Schaffer,
    13 F. Supp. 2d 390 (E.D.N.Y. 1998) .......................................................6

Roman Catholic Diocese of Rockville Center, New York, v. Incorporated Village of Old
    Westbury,
    2012 WL 1392365 (E.D.N.Y. April 23, 2012) .......................................3

Salaam v. Syracuse Model Neighborhood Facility,
    2012 WL 893487 (N.D.N.Y. March 15, 2012)..................................14, 15

<u>Sampson v. Medisys Health Network Inc.</u>,
    2011 WL 579155 (E.D.N.Y. Feb. 8, 2011)............................................................28

<u>Scott v. Eastman Chemical Co.</u>,
    275 Fed. Appx. 466 (6th Cir. 2008) ...................................................................15

<u>Steiner v. Sprint</u>,
    957 F. Supp. 65 (S.D.N.Y. 997) ........................................................................15

<u>Syracuse v. Loomis Armored US, LLC</u>,
    2012 WL 88332 (N.D.N.Y. Jan. 11, 2012)..........................................................21

<u>Warren v. Goord</u>,
    2006 WL 1582385 (W.D.N.Y. May 26, 2006) .......................................................6

## STATUTES

42 U.S.C. § 1981....................................................................2, 7, 8, 9, 18, 19, 20

42 U.S.C. § 1983..................................................................................................1, 2

Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") ...................................1, 2, 25, 26

New York Code of Rules and Regulations ("NYCRR").........................................26

New York State Human Rights Law ("HRL") .................................................1, 2

New York Labor Law ("NYLL") .......................................................1, 2, 25, 26, 27, 28

Title VII of the Civil Rights Act
    of 1964, 42 U.S.C. § 2000e et seq. ...........................1, 2, 7, 8, 9, 11, 13, 14, 15, 16, 17, 18, 20

## I.    INTRODUCTION AND PROCEDURAL BACKGROUND

Plaintiff Joseph C. James' ("James") proposed Second Amended Complaint ("SAC") is nearly indistinguishable from the Amended Complaint that this Court dismissed in large part in its Order dated February 2, 2012 (the "Order").  Aside from additional conclusory allegations and circuitous hyperbole, the SAC differs little from its predecessor complaint, and does not remedy the fatal flaws identified in the Order.  In short, it would be futile to grant James' Motion to Amend because the SAC is subject to dismissal under Fed. R. Civ. P. 12(b)(6) and fails to conform with this Court's directives and federal pleading rules.

In the Amended Complaint, James claimed that defendants Bank of America, N.A. (incorrectly named in the Complaint as "Countrywide Financial Corp., Countrywide Home Loans, Inc., Bank of America, Corp." and hereinafter referred to as "Countrywide" or "Defendant"), and individually named defendants Robert Donovan ("Donovan"), William Purschke ("Purschke"), and Scott Horowitz ("Horowitz") (the "Individual Defendants"), (collectively "Defendants"), discriminated and retaliated against him, among other things, because of his race.  The Amended Complaint was fifty pages, and over 180 paragraphs long. See Amended Complaint.  Yet, in the Order, this Court dismissed the majority of claims raised in the Amended Complaint, including, in their entirety, Count II (Title VII Hostile Work Environment); Count III (Title VII Retaliation); Counts IV & V (New York State Human Rights Law ("HRL")); Count VII (42 U.S.C. § 1983); Count VIII (the Fair Labor Standards Act, 29 U.S.C. § 201 ("FLSA") and New York Labor Law ("NYLL")); Count IX (Breach of Contract); and Count X (Unjust Enrichment).  See James v. Countrywide Financial Corp., 2012 WL 359922, at *22 (E.D.N.Y. Feb. 2, 2012).

In deciding Defendants' Motion to Dismiss the Amended Complaint ("Motion to Dismiss"), the Court dismissed all but the following:

- Count I – Title VII Race Discrimination:  James' claims against Countrywide stemming from alleged slow processing of James' customer loan applications.  Id.
- Count VII – 42 U.S.C. § 1981:  James' alleged retaliatory demotion in 2007, as well as discrimination claims stemming from (1) alleged slow processing of James' customer loan applications; (2) James' alleged unequal pay compared to Horowitz for the period while they were co-Branch Managers; (3) alleged less favorable treatment of James by Donovan and Purschke compared to Horowitz; and (4) Donovan and Purschke's alleged attempts to sabotage James' receipt of satisfactory recruits at the Massapequa branch.

The Court dismissed the majority of the claims asserted in the Amended Complaint for reasons including failure to state a claim, failure to exhaust, lack of jurisdiction, and timeliness, and provided James with one opportunity to further amend the Amended Complaint.  James, 2012 WL 359922 at *22.  In doing so, the Court cautioned specifically that any proposed Second Amended Complaint, compared with the 50 page, 180 paragraph Amended Complaint, must conform to Rule 8.  Id.

However, at 45 pages consisting of 186 numbered paragraphs[1] and thirteen substantive footnotes, and an additional sixty-five pages of attachments, James' SAC effectively ignores this Court's Order, and simply re-alleges nearly all the facts and claims, albeit with even greater hyperbole, and with more labels and conclusory allegations.  The SAC does not remedy the deficiencies that were fatal to James' claims to begin with, nor does it even acknowledge the Court's findings that barred certain claims as a matter of law.  Instead, James re-asserts all of his legal claims, except for those brought under the HRL, which were patently improper due to lack of subject matter jurisdiction, § 1983, which is not actionable against private entities, and the FLSA, though he maintains an identical claim under the NYLL.  Moreover, the SAC violates the spirit and language of F.R. Civ. P. 8, because it is anything but short and plain, and its averments

---

[1] There are two sets of paragraphs each numbered ¶¶ 178-181.  See SAC at p. 41-44.  Count IV (¶¶ 178-181) and Count V (¶¶167-182) are misnumbered.

are not concise and direct.  In sum, it would be futile to grant the pending Motion to Amend, because the proposed SAC is no different from the Amended Complaint in its legal and pleading shortcomings, and, moreover, it is subject to dismissal because it fails to conform both to Rule 8 and to the express dictates of this Court's Order.

## II.     STANDARD OF REVIEW

At this stage in the litigation, nearly two years after he filed the original Complaint, and after having already filed an Amended Complaint only to have the majority of his claims dismissed by the Court, James may further amend only with leave of Court.  Barbata v. Latamie, 2012 WL 1986981, at *2 (S.D.N.Y. June 4, 2012).  Although "it is within the sound discretion of the district court to grant or deny leave to amend," a party's motion for leave to amend may be denied for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  Id.; Roman Catholic Diocese of Rockville Center, New York, v. Incorporated Village of Old Westbury, 2012 WL 1392365, at *5 (E.D.N.Y. April 23, 2012) ("A motion to amend may be denied … upon a showing of the futility of the proposed amendment.").  A proposed amended complaint "is considered futile if the amended pleading would not survive a motion to dismiss, either pursuant to Rule 12(b)(6) or on some other basis."  Ony, Inc. v. Cornerstone Therapeutics, Inc., 2012 WL 1835671, at *7 (W.D.N.Y. May 18, 2012).

## III.    ARGUMENT

### A.      It Would Be Futile To Grant James' Motion To Amend Because The Proposed Second Amended Complaint Does Not Conform To Rule 8, In Direct Violation Of This Court's Explicit Directive.

In its Order dismissing the majority of claims alleged in the Amended Complaint, this Court's final directive to James was clear -- any proposed Second Amended Complaint must conform to Rule 8.  James, 2012 WL 359922 at *22.  James' Amended Complaint was replete

with "unnecessary prolixity. . .[which places] an unjustified burden on the court and the party who must respond to it. ..." Fitzgerald v. Kellner, et al., 2006 U.S. Dist. LEXIS 79877, at *7 (N.D.N.Y. Oct. 31, 2006) (internal brackets omitted) (ordering plaintiffs to file an amended complaint without unnecessary detail and setting for the claims they intend to bring). Although the Court chose not to dismiss the Amended Complaint on these grounds, it instead directed James, in no uncertain terms, to remedy this deficiency in any proposed Second Amended Complaint. James, 2012 WL 359922 at *22.

Pursuant to Rule 8, a complaint "need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation, 218 F.R.D. 76, 77 (S.D.N.Y. 2003) (quoting Fed. R. Civ. P. 8(a)(2). Likewise, "each specific averment of a pleading shall be simple, concise and direct." Fed. R. Civ. P. 8(e)(1). The purpose of these rules is straightforward. "The statement of the claim should be plain in that it should state facts, not conclusions of fact," and it should be short because unnecessary content places an unjustified burden on the court and the responding party to select relevant material from a mass of verbiage. Merrill Lynch & Co., 218 F.R.D. at 77; Diez v. Washington Mutual Bank, 2011 WL 4434062, at *2 (E.D.N.Y. Sept. 21, 2011). Complaints which ramble, which needlessly speculate, accuse, and condemn, and which contain circuitous diatribes ... do not conform with these goals and this system." Prezzi v. Berzak, 57 F.R.D. 149, 151 (S.D.N.Y. 1972); Infanti v. Scharpf, 2008 WL 2397607, at *1 (E.D.N.Y. June 10, 2008).

Despite the Court's directives, the SAC is no less violative of Rule 8 than its predecessor. Rather than a "short and plain statement," the SAC is a lengthy narrative of facts, much of it in non-chronological order that jumps from year to year, that purports to tell James' tale in the same "long-winded, tangential manner" forbidden by Rule 8. Dunn v. Albany Medical College, 2010

WL 2326127, at *6 (N.D.N.Y. June 7, 2010).   Additionally, James consistently includes multiple, often disjointed, statements within single subparagraphs, in contravention of Rule 8(d), which, rather than clarify his arguments or isolate the factual basis for his claims, instead impermissibly heightens the burden Defendants face in adequately responding to the allegations against them. Id.; See e.g., ¶¶ 14, 37, 48, 51 and n.6, 55 – 56, 59, 61 and n.7, 65, 75, 79, 80 and n.8, 82, 86, 89, 91-94, 97, 98, 102-103, 112 and n.12, 120, 125, 129, 135, 139-140, 142, 152, 158, 160, 164-165, 176.   Furthermore, the SAC is unduly bloated with repetitive allegations, which fly in the face of the "short and plain statement" requirement.   See e.g., ¶¶ 24-27 compared to ¶ 121; ¶ 29 compared to ¶ 41; ¶ 30 compared to ¶¶ 108, 112; ¶ 34 compared to ¶ 114; ¶ 35 compared to ¶ 117; ¶ 98 compared to ¶ 140; ¶ 53 compared to ¶¶ 115-117; ¶ 44 compared to ¶¶ 119, 123; ¶ 61 compared to ¶¶ 120.

Moreover, the SAC is replete with discursive, redundant, argumentative, and disjointed assertions, many of which merely state the conclusions necessary to prevail on the merits and are unsupported by facts.   See Merrill Lynch & Co., 218 F.R.D. at 78.   For example, many paragraphs contain no factual allegations, and consist solely of conclusions, verbosity, and James' personal beliefs.   See ¶¶ 14, 27, 43, 45, 59-61, 63, 71, 77, 99, 104, 116-119, 121-123, 132-133, 135, 137-138, 141, 151, 155, 159-160, 165, 174.

Inclusion of irrelevant and immaterial allegations likewise fails to conform to Rule 8 and only adds to the prolix nature of the complaint. Merrill Lynch & Co., 218 F.R.D. at 78, 79.   Yet, James improperly includes numerous allegations that are immaterial to his claims.   For example:

- Of his sixty-five pages of attachments, James included Exhibit "K," his SDHR Rebuttal Letter, apparently as a sort of tit-for-tat after Defendants attached and referenced James' agency charges as part of their Motion to Dismiss. See SAC at p.8, n.4.

- In SAC ¶ 174, James references a DOL complaint and makes certain allegations "upon information and belief" about the alleged ensuing preliminary investigation, which never reached an adjudication upon the merits, which are wholly immaterial and improper for inclusion in a complaint. See Merrill Lynch, 218 F.R.D. at 79.
- James' feelings, beliefs, perceptions, and other allegations that are not relevant to his claims and inappropriate for inclusion in a complaint, are myriad in the SAC. See e.g., ¶¶ 15-16, 19, 27, 34, 44, 49-50, 52, 59, 60-63, 66, 70-71, 73, 80 and n.83, 86, 104, 113, 119, 121, 123-125, 129-131, 138, 141, 159-160.

James' on-going failure to conform his pleadings with Rule 8 is compounded by the fact that he fails to identify in any fashion a) how the SAC conforms with Rule 8 compared to the Amended Complaint; and b) which or how any of the allegations in the 186+ paragraphs in the SAC remedies the otherwise fatal deficiencies to his claims. Both the Court and Defendants in this matter are in the difficult position of sorting through the conclusory, disjointed, and hyperbole-laden SAC to determine exactly what facts are being alleged, which facts are newly alleged, and how those facts are connected to James' claims. With the SAC, James fails to satisfy his burden because there is no cognizable set of facts, separate and apart from the conclusory allegations, that support James' individual claims.

In sum, dismissal with prejudice is appropriate when, after being directed by the Court to file an amended pleading that satisfies the mandates of Rule 8, a plaintiff fails to do so and instead merely recycles the prior complaint(s). See Roberto's Fruit Market, Inc. v. Schaffer, 13 F. Supp. 2d 390, 397 (E.D.N.Y. 1998). Here, contrary to this Court's directives to file a Second Amended Complaint that conforms with Rule 8, James merely recycled his Amended Complaint by adding superfluous material to it. Warren v. Goord, 2006 WL 1582385, at *7 (W.D.N.Y. May 26, 2006) (denying motion to amend because the proposed amended complaint failed to comply with Rule 8); Owens v. Shields, 34 Fed. Appx. 33, 34 (2d Cir. 2002).

**B.** **The "More Specific Facts and Details" Allegedly Included In The SAC Do Not Remedy The Deficiencies Identified By The Court When It Dismissed The Majority Of James' Title VII and § 1981 Discrimination and Retaliation Claims.**

In his Motion to Amend, James does not acknowledge the Court's analysis and findings, nor does he identify which facts have been added to save his claims and how they are sufficient to state a viable claim for relief under either Title VII or Section 1981. See Memorandum at p. 8-9. For the reasons set forth below, it would be futile to grant James' Motion to Amend and file the SAC because James has done little more than add additional conclusory statements and irrelevant factual allegations to his claims, none of which remedy the deficiencies that warranted dismissal in the first place.

**1.** **James Has Not Remedied The Deficiencies That Warranted Dismissal Of His Title VII Claims.**

This Court dismissed in their entirety James' Title VII hostile work environment and retaliation claims, and all but one aspect of James' Title VII race discrimination claim. James, 2012 WL 359922 at *23. In doing so, the Court also ruled that the majority of allegations giving rise to James' Title VII claims were barred by the statute of limitations, and only those arising between January 3, 2008, and October 29, 2008, the date when James filed his Charge with the SDHR, were properly before the Court. James, 2012 WL 359922 at *7, 10. James states in his Memorandum that he "no longer asserts Title VII claims for acts occurring before January 3, 2008." Memorandum at p. 4. Yet, notably, the SAC makes no attempt to limit James' Title VII claims to those arising between January 3, 2008, and October 29, 2008, and instead simply incorporates all factual allegations spanning the period between 2003 and 2010, and makes only vague and conclusory allegations as to Defendants' liability under Title VII. See SAC at ¶¶ 143-148. Thus, it would be futile to grant James' Motion to Amend, because James has failed to

remedy or acknowledge the grounds for this Court's dismissal of those allegations that are time-barred.

> **a.    James Cannot Resurrect A Hostile Work Environment Claim Because He Did Not Exhaust His Administrative Remedies And Fails To Plead An Actionable Claim For Relief.**

The Court dismissed James' hostile work environment claim for failure to exhaust administrative remedies. James, 2012 WL 359922 at *14.  The SAC does not contain a specific claim for hostile work environment, whether under Title VII or Section 1981.  However, in the Memorandum, James conclusorily states that he has given "new support to his allegations of hostile work environment" without identifying which "new facts" purportedly support such a claim.  Memorandum at p.9.  James has not provided any legal justification (nor is there one) why any Title VII hostile work environment claim in the SAC is not subject to dismissal for failure to exhaust just as in the Amended Complaint.  See Memorandum.

Even if James' claim for hostile work environment were not barred for failure to exhaust, the SAC fails to allege facts sufficient to state a claim to relief that is plausible on its face.[2]  To plead successfully a hostile work environment claim, James must allege facts showing "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment.  Parekh v. Swissport Cargo Services, Inc., 2009 U.S. Dist. LEXIS 8543, at *11 (E.D.N.Y. Feb. 5, 2009).  A hostile work environment claim is actionable only when the conduct complained about was based on the employee's membership in a protected class.  Barton v. Mikelhayes, 2010 U.S. Dist. LEXIS

---

[2] James did not raise a Section 1981 hostile work environment claim in the Amended Complaint.  See Amended Complaint.  Nor does the SAC include a Section 1981 hostile work environment claim.  See SAC at ¶¶ 149-160.  However, to the extent James now asserts in the Memorandum that he is claiming hostile work environment under Section 1981, such a claim fails to state a claim for relief for the same reasons as a Title VII hostile work environment claim.  See Hyunmi Son v. Reina Bijoux, Inc., 823 F. Supp. 2d 238, 242 n.35 (S.D.N.Y. 2011).

23789 at *16 (N.D.N.Y. Mar. 15, 2010).  Aside from James' conclusory assertions, the facts alleged contain no suggestion of race-based hostility or offensiveness.  Parekh, 2009 U.S. Dist. LEXIS 8543 at *15.  Moreover, the SAC contains no specific allegations of race-related actions, incidents, or comments, and aside from James' racial self-identification, the facts alleged are wholly race neutral.   See id. at *19 (dismissing hostile work environment claim where employee's allegations were not sufficiently linked to gender); Okon v. Appia, 2008 U.S. Dist. LEXIS 42412, at *34 (E.D.N.Y. May 29, 2008) (dismissing employee's hostile work environment claim where the allegations were on the whole sex neutral).  Accordingly, it would be futile to grant James' Motion to Amend to allow any claim for hostile work environment, whether under Title VII or Section 1981.

> **b.**    **James' Title VII Retaliation Claim Fails For The Very Same Reasons That Warranted Dismissal Of The Amended Complaint, And Because Any Newly Pleaded Allegations Fail To State A Plausible Claim For Relief.**

This Court dismissed James' Title VII retaliation claims in their entirety.  In doing so, the Court ruled as follows:

- James' alleged retaliatory "demotion" to Sales Manager occurred before January 8, 2008, and thus was time-barred.  James, 2012 WL 359922 at *11;
- James' alleged confrontation with Horowitz in May 2008, and Purschke and Donovan's alleged failure to reprimand Horowitz related to the confrontation, were not materially adverse actions, as a matter of law.  Id. at *12;
- James failed to plead facts sufficient to establish a causal connection between any protected activity and the alleged "unusually slow processing of customer loan applications."  Id. at *12;
- James failed to plead facts sufficient to establish a causal connection between any protected activity and the Written Counselings he received on May 7, 2008, and July 29, 2008.  Id. at *12.

It would be futile to grant James' Motion to Amend, because the SAC contains no additional factual allegations sufficient to remedy these deficiencies identified by the Court.  As with his other claims, James makes only conclusory assertions that newly alleged facts "unequivocally demonstrate" a causal connection between his alleged protected activities and the processing of his loan applications and Written Counselings.  Memorandum at p.9.  James does not identify these facts, and, to the contrary, the SAC includes nothing more than additional conclusory allegations, not facts sufficient to establish the requisite causal connection.  See SAC at ¶ 98 (regarding Written Counselings), ¶¶ 97, 99, 101, 140 n.13 (regarding processing of loan applications).

In the SAC, James also claims that he was retaliated against when: he was placed on a Performance Improvement Plan in September 2008 (SAC at ¶¶ 103, 140) and denied approval to bring his recruited sales team with him after he requested and was granted a transfer to the Melville branch sometime after September 2008 (SAC at ¶ 102), and when he was subjected post-employment retaliation relating to his termination from a position with Titleserv in November 2010.  (SAC at ¶¶ 126-132).  As with his other claims, James does not identify the facts upon which he bases his assertion that these retaliation claims are sufficiently pleaded to withstand a Rule 12(b)(6) motion to dismiss.  Defendants respectfully submit, however, that for many of the same reasons his previously pleaded retaliation claims fail, so do those that are newly alleged.

      i.     **James Has Not Alleged Any Facts Establishing A Causal Connection Between His Alleged Protected Activities And His Performance Improvement Plan, And The Denial Of His Request To Bring His Sales Team With Him Upon His Voluntary Branch Transfer.**

James claims that he was placed on a Performance Improvement Plan ("PIP") in September 2008 in retaliation for his alleged complaints to management and Human Resources. SAC at ¶ 140(a)-(d). Assuming (but not conceding) that the PIP could be considered an adverse employment action for purposes of a retaliation claim, James has not alleged facts sufficient to establish a causal connection between any protected activity and his receipt of the PIP. See James, 2012 WL 359922 at *10. First, although this Court found that James pleaded sufficient facts to establish that his November and December 2007 complaints to Human Resources were protected activities, James only now makes the conclusory assertion that he also did so in January 2008, and on June 4 and August 11, 2008. SAC at ¶ 140(a). However, the SAC contains no facts related to any alleged complaint to HR on January 18, 2008, and as to June 4 and August 11, 2008, James claims only that he addressed his Written Counselings on those dates. SAC at ¶ 98. James' assertion in the SAC that in doing so he was "putting the Defendants on notice" of being treated differently than Horowitz is conclusory and not sufficient to allege protected activity. See Foster v. Humane Society of Rochester, 724 F. Supp. 2d 382, 395 (W.D.N.Y. 2010) (the substance of the complaint, not the terminology used, determines whether plaintiff engaged in a protected activity). Likewise, as to SAC ¶ 140(b)-(c), James' complaints about Horowitz' performance are not protected activities under the law. See Collette v. St. Luke's Roosevelt Hospital, 2002 WL 31159103, at *3 (S.D.N.Y. Sept. 26, 2002) (protected activity under Title VII must oppose conduct that violated Title VII).

Furthermore, James has not alleged any facts establishing a causal connection between any of his alleged complaints and the September 2008 PIP.  There are no facts alleged connecting his alleged complaints to the PIP, and, moreover, James does not allege that Defendants issued the PIP in an effort to dissuade him from making complaints of discrimination.  See James, 2012 WL 359922 at *13.  In fact, James alleges only that Defendants issued the PIP as discipline for his poor loan production.  See SAC at ¶ 103.  Absent anything more, as it relates to his alleged retaliatory PIP, James fails to allege a claim for relief that is plausible on its face.

James also claims that in or after September 2008, he requested and was approved a transfer to the Melville branch, but that he suffered retaliation when he was "denied approval to bring his recruited sales team with him."  SAC at ¶ 102.  James does not identify the alleged protected activity for which he claims retaliation, nor does he identify who denied his request or whether his request was denied in an effort to dissuade him from engaging in protected activity.  See SAC at ¶ 102.  In fact, the alleged denial of James' request not only is not sufficiently adverse to constitute a materially adverse employment action on its face, but the record facts demonstrate that such conduct would not dissuade a reasonable worker from making or supporting a charge of discrimination, since James filed his Charge with the SDHR only weeks later.  See SAC at ¶ 3; Ragin v. East Ramapo Central School District, 2010 WL 1326779, at *19 (S.D.N.Y. March 31, 2012) (because a key element of establishing an actionable employment action in the retaliation context is whether the challenged action might have dissuaded a reasonable worker from making or supporting a charge of discrimination, the fact that a worker was not dissuaded from making such a claim, and did in fact make a charge following the

challenged action, is a serious flaw to that retaliation claim); <u>James</u>, 2012 WL 359922 at *12 (same).

Finally, James makes the conclusory allegation, in a footnote, that he suffered "retaliatory acts of hostile harassment and damaging sabotage of his loan production and processing slowdowns . . . until his last day of employment." SAC at ¶ 140(c) n.13. James alleges no facts to support this conclusory assertion, and instead, simply attaches it as a footnote to his undated claim that he objected to Defendants' alleged failure to discipline Horowitz for so-called compliance breaches. This element of James' retaliation claim fails because any "objection" to Horowitz' own job performance is not a protected activity under Title VII. <u>Collette v</u>, 2002 WL 31159103 at *3. Moreover, even if James had identified a protected activity related to his retaliation claim, the claim still must fail because he alleges no facts from which a causal connection may be inferred. <u>See James</u>, 2012 WL 359922 at *12. A wholly conclusory allegation such as that contained in SAC ¶ 140 n.13 cannot withstand a 12(b)(6) motion to dismiss. <u>See Foster</u>, 724 F. Supp. 2d at 388. In sum, James' retaliation claims that he was denied a request to bring his sales team with him after his voluntary transfer, and that he generally suffered "retaliatory acts of hostile harassment and damaging sabotage of his loan production and processing" fail to state a claim for relief because there are insufficient facts alleged to "nudge" the claim from conceivable to plausible. <u>See James</u>, 2012 WL 359922 at *10; <u>Fattoruso v. Hilton</u>, 2012 WL 2102394, at *3 (S.D.N.Y. June 11, 2012) (when "the court can infer no more than 'the mere possibility of misconduct' from the factual averments - in other words, if the well-pleaded allegations of the complaint have not 'nudged claims across the line from conceivable to plausible,' dismissal is appropriate").

ii.     **James Fails To State A Claim For Post-Employment Retaliation.**

This Court dismissed all of James' Title VII retaliation claims, but did not provide a separate analysis of why James' post-employment retaliation claim failed to state a claim for relief that was plausible on its face. See James, 2012 WL 359922 at *5. However, because the SAC fairs no better at alleging an actionable post-employment retaliation claim, it would be futile to allow James to amend the complaint to re-allege such a claim. See SAC at ¶¶ 124-132. Although Title VII "protects former employees from certain post-termination manifestations of discrimination and retaliation," James' claim fails both because he did not exhaust it, and because he fails to allege sufficient facts to state a claim for post-employment retaliation. See Salaam v. Syracuse Model Neighborhood Facility, 2012 WL 893487, at *5 (N.D.N.Y. March 15, 2012).

To state a claim for post-employment retaliation, James must allege facts tending to those (1) that he engaged in a protected activity, (2) that his employer was aware of the activity, (3) an action adverse to his employment occurred, and (4) there was a causal connection between the protected activity and the adverse action." Male v. Tops Markets, LLC, 2010 WL 4319769, at *2 (W.D.N.Y. Oct. 29, 2010). In this case, James alleges that he engaged in protected activity when he filed his charge on October 29, 2008, and suffered an adverse action when he was subsequently terminated from Titleserv in November 2010. Specifically, he alleges that shortly after he began working for Titleserv, he introduced himself to Brian Pasley ("Pasley"), Senior Vice President, and learned that both he and Pasley had previously worked with Donovan. SAC at ¶¶ 127-128. Titleserv terminated James' employment a few days later. Id. at ¶ 129. Based on this vague interaction, James speculates that Donovan must have intervened to "harm [his] job future and reputation." SAC at ¶ 129.

14

First, James' retaliation claim fails because he has failed to exhaust his administrative remedies. This alleged post-termination retaliation occurred in November 2010, two years after James filed his Charge, and four months after the EEOC adopted the SDHR's Determination and Order finding no probable cause to support the claim of unlawful discrimination or retaliation. Therefore, James' past retaliation claims did not fall within the scope of the investigation related to his October 29, 2008, Charge, and no new or amended charge was later filed. See Scott v. Eastman Chemical Co., 275 Fed. Appx. 466, 474 (6th Cir. 2008).[3]

Second, James' fails to plead any facts to establish the fourth required element to prove retaliation – namely a causal connection between the 2008 charge and the 2010 termination. See Altieri v. Albany Public Library, 172 Fed. Appx. 331, 333 (2d Cir. 2006) (affirming 12(b)(6) dismissal of retaliation claim because "no causal connection could be inferred from a two year gap" between protected activity and adverse action); Steiner v. Sprint, 957 F. Supp. 65, 66 (S.D.N.Y. 997) (three years between filing of EEOC charge and termination is far too long to suggest causal connection). Because James has not pleaded any facts upon which his speculation is predicated, his claim fails to establish a sufficient factual basis to survive a motion to dismiss. Salaam, 202 WL 893487 *5.

### c. James Has Not Remedied The Legal Or Factual Deficiencies That Warranted Dismissal Of His Title VII Race Discrimination Claims, Including Any Claim For Constructive Discharge.

In the Order, this Court ruled that only James' claims that he was subjected to "unusually slow processing of customer loan applications . . . which adversely affected the timing and

---

[3] James appears to acknowledge his obligation to exhaust his administrative remedies as to his post-employment retaliation claims because he alleges in the Memorandum that he "attempted to reopen his SDHR proceeding," but that the SDHR "denied [him] the opportunity to assert his new claims." Memorandum at p.9. Although James provides no support for this assertion, and has not indicated when he attempted to assert his claims or for what reason the SDHR denied his request, the propriety of the SDHR's actions is not before this Court. Whether for timeliness reasons or others, the fact is that James did not file an administrative charge and receive a notice of right to sue related to his post-employment retaliation claim, and thus he has not exhausted his administrative remedies.

diminished the amount of his payout under his compensation and/or commission structure," and "extremely slow turnarounds" of his loan applications survived Defendants' Motion to Dismiss James' Title VII claims. James, 2012 WL 359922 at *9, 23. This Court granted Defendants' Motion to Dismiss as it relates to all Title VII discrimination claims arising out of conduct that occurred prior to January 3, 2008. Id. at *8. The Court also dismissed James' Title VII claims relating to a May 2008 confrontation between James and Horowitz, Defendants' alleged failure to discipline Horowitz, and the two Written Counselings issued to James, because none are materially adverse actions sufficient to sustain a Title VII discrimination claim. Id. at *9. James has re-alleged all facts upon which his Title VII discrimination claims are based, without providing justification as to how or why they are not similarly deficient, including all those that this Court ruled were time-barred. See SAC at ¶¶ 98, 116-117, 121, 140(b),(c).

This Court also dismissed James' so-called constructive discharge claim, to the extent it was raised, because the Amended Complaint "does not contain a single allegation as to the circumstances surrounding the cessation of plaintiff's employment." James, 2012 WL 359922 at *9. In the Memorandum, James makes the conclusory statement that new allegations in the SAC "demonstrate the intolerably oppressive work environment that was intentionally created by Defendants in the hopes that Plaintiff would suffer a constructive discharge." Memorandum at p.9. James does not identify the facts to which he purports to rely for this assertion.[4]

To survive a motion to dismiss a constructive discharge claim, James must allege facts tending to show that Countrywide "intentionally creat[ed] a work atmosphere so intolerable that

---

[4] Although the Court did not dismiss on these grounds, James' constructive discharge claim also fails because James failed to exhaust his administrative remedies. James filed his Charge on October 29, 2008. SAC at ¶ 3. James' final day of employment with Countrywide was March 23, 2009. Id. at ¶ 174. Because he neither included it in his Agency charge, nor subsequently amended the Charge to add a claim for constructive discharge, James is barred from raising it here. See Parekh v. Swissport Cargo Services, Inc., 2009 U.S. Dist. LEXIS 8543, at *9 (E.D.N.Y. Feb. 5, 2009) (only claims that are included in an administrative charge or that are based on conduct which is "reasonably related" to the facts alleged in the charge may be brought in a civil complaint).

he [was] forced to quit involuntarily." Murdaugh v. City of New York, 2011 WL 798844, at *5 (S.D.N.Y. March 8, 2011).  "Working conditions are intolerable when, viewed as a whole, they are so different or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."  Id.  James alleges no facts regarding the six months following his voluntary transfer to the Melville branch and preceding his separation of employment with Countrywide, or the circumstances of his separation itself.  In fact, there are no facts alleged as to the period between September 2008 and March 2009.  See SAC ¶¶ 142, 154.

Further, a constructive discharge claim "requires the plaintiff to 'demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment.'"  Birkholz v. City of New York, 2012 WL 580522, at *14 (E.D.N.Y. Feb. 22, 2012).  As demonstrated above, James has not alleged facts sufficient to plead even an actionable hostile work environment claim.  Moreover, the fact that James did not resign during the long period when he worked with or reported to the Individual Defendants, but instead did so approximately six months after voluntarily transferring to a different branch, seriously undermines any assertion that he found the conditions so intolerable that he was forced to quit involuntarily.  Id.; see also  Murdaugh, 2011 WL 798844 at *6 (noting that "[a]bsent deliberate employer action, a significant passage of time where the employee endured the conditions complained of is sufficient to undermine a claim that working conditions were intolerable").  James has not alleged further facts to suggest that his work environment became worse while he was employed at the Melville branch.  See SAC at ¶ 99 (alleging that actions that brought about his constructive discharge began in 2008 and lasted until his separation from Countrywide); Birkholz, 2012 WL 580522 at *22.  For these reasons, and because James failed to exhaust his

Title VII constructive discharge claim, it would be futile to grant the Motion to Amend to allow a constructive discharge claim to be re-alleged.

> ### 2. The SAC Does Not Cure The Deficiencies Identified By This Court In Dismissing The Majority Of James' Section 1981 Discrimination And Retaliation Claims.

In deciding the Motion to Dismiss the Amended Complaint, this Court applied the same standards to James' Section 1981 and Title VII discrimination and retaliation claims arising out of conduct that occurred after January 3, 2008. James, 2012 WL 359922 at *18. Thus, for the same reasons it would be futile to allow James to amend his complaint to re-allege violations of Title VII for that period, it would be futile to allow James to re-allege the same claims under Section 1981.[5] The Court further assessed James' claims arising out of conduct that occurred prior to January 3, 2008, but before October 27, 2006, which are viable under Section 1981 only. James, 2012 WL 359922 at *18. In doing so, the Court made the following findings as to James' Section 1981 discrimination claims:

- James' claim based on his March 2007 "termination" due to reduction-in-force was not actionable under Section 1981 because James did not allege that it was racially motivated. Id.;
- James' failed attempt to interview with Jobe Turini ("Turini") in March 2007 failed to state a cause of action for race discrimination under Section 1981 because they were "simply too speculative to create a plausible inference of race discrimination. Id.;
- James' allegations related to Donovan's hiring of Horowitz as co-Branch Manager in August 2007 failed to allege a "materially adverse" change in the terms and conditions of James' employment sufficient to sustain a Section 1981 claim. Id. at *19;

---

[5] To the extent that James newly claims his September 2009 Performance Improvement Plan ("PIP") was a discrete act of discrimination under Section 1981, his claim must fail because the PIP, like the Written Counselings, is not a materially adverse action sufficient to sustain a Section 1981 claim. See James, 2012 WL 359922 at *9; SAC at ¶¶ 96, 102-103. The PIP, a performance review, did not involve a resulting termination, demotion, decrease in wage or salary, less distinguished title, material loss of benefits, or loss of responsibilities. See James, 2012 WL 359922 at *9.

- James' claim that he was paid less than Horowitz as co-Branch Managers stated a claim for relief under Section 1981. Id.;

- James' claim that he was treated less favorably than Horowitz by Donovan because of his race stated a claim for relief under Section 1981. Id.; and

- James' claim related to the Individual Defendants' alleged attempts to sabotage his receipt of satisfactory recruits to the Massapequa branch sufficiently alleged a claim under Section 1981. Id.

Of the Section 1981 claims addressed and dismissed by this Court, James has re-alleged all but that related to his March 2007 termination due to reduction-in-force.

Yet, James has not remedied the deficiencies that brought about the dismissal of his Section 1981 discrimination claims. As to his claim regarding a failed interview with Turini for a position on Long Island, James re-asserts his allegations, and adds new "facts" claiming that while he waited for Turini, he observed that there were no African-Americans at the branch, and that Turini's assistant "appeared to have a Greek surname." See SAC ¶¶ 23-27, 121. James also identifies the individual who he claims told him that Turini had a history of hiring Greek applicants. Id. at ¶ 26. James' "new" facts, however, do not raise his claim that Turini failed to hire him because of his race above mere speculation, and the Motion to Amend to re-allege this claim is futile. James, 2012 WL 359922 at *18. Likewise, the SAC adds little to James' claim relating to Donovan's hiring of Horowitz as co-Branch Manager. See SAC ¶¶ 48-60, 62. There are no facts alleged to suggest that James' "job duties or responsibilities changed in any way or that any of his managerial responsibilities were shifted away from him to Horowitz." James, 2012 WL 359922 at *19. Instead, James merely repeats the conclusory assertion already asserted in the Amended Complaint, that by hiring Horowitz, Donovan deprived him of his delegated authority and his dignity. Id.; Amended Complaint at ¶¶ 47-48, 52-59, 62, 65; SAC at ¶¶ 48-60, 62, 92, 116-117.

19

Finally, to the extent James alleges constructive discharge, or any other form of discrimination already addressed herein under the Title VII rubric, James' Section 1981 claims as alleged in the SAC fail for the very same reasons as those brought under Title VII. <u>James</u>, 2012 WL 359922 at *18.

### a.   James' Section 1981 Retaliation Claims Fail For The Same Reasons As His Title VII Retaliation Claims.

This Court ruled that to extent it dismissed James' Title VII retaliation claims, those same claims cannot be maintained pursuant to Section 1981. <u>James</u>, 2012 WL 359922 at *20. As to post-employment retaliation or any other form of retaliation alleged in the SAC and already addressed herein under the Title VII rubric, James' Section 1981 retaliation claims fail for the same reasons.

### C.   <u>It Would Be Futile to Allow James To Re-Plead A Breach Of Contract Claim</u>.

In its Order, the Court dismissed James' breach of contract claim in its entirety because James did not identify the contract(s) at issue and "has not specified the terms of the agreement that defendant purportedly breached, other than to assert that these 'certain contracts' set forth 'the commissions and other elements of compensation to be paid to Plaintiff." <u>James</u>, 2012 WL 359922 at *22. However, despite attaching to it approximately forty-four pages, consisting of nine separate documents and agreements that James refers to collectively as his "Employment Related Documents," the SAC does not remedy this fatal flaw. <u>See</u> SAC ¶¶ 36; Exhibits B-J.

### 1.   James Cannot Maintain A Breach Of Contract Claim Simply By Attaching And Referencing All Alleged Workplace Agreements Between Himself And Countrywide.

James believes that by simply attaching the employment related documents, he satisfies his burden. <u>See</u> Memorandum at p. 9-10. However, as the Court made clear, and as is well

established by relevant case law, it is not sufficient for James to merely reference a body of documents that he alleges control his breach of contract claims. "To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." Howell v. American Airlines, Inc., 2006 WL 3681144, at *3 (E.D.N.Y. Dec. 11, 2006). In pleading these elements, "a plaintiff must plead the provisions of the contract upon which the claim is based," and "set forth the terms of the agreement upon which liability is predicated … by express reference." Id.; see also Syracuse v. Loomis Armored US, LLC, 2012 WL 88332, at *5 (N.D.N.Y. Jan. 11, 2012).

James claims that Countrywide breached all of the Employment Related Documents and failed to pay him compensation and commissions. See ¶¶ 36, 42-43, 92, 116, 133 – 134, 136, 138, 141, 162-166. Despite being counseled by this Court, however, James does not identify the terms of the Employment Related Documents that Countrywide purportedly breached. James, 2012 WL 359922 at *22. In other words, James has identified the documents that he alleges governed his employment with and compensation by Countrywide, but has not identified the controlling terms and provisions or how Countrywide allegedly breached them. As to Exhibits D–J, specifically, James does nothing more than identify the documents and make the conclusory allegation that Countrywide breached them all. See SAC ¶¶ 36 (identifying each individual exhibit), 134-136, 138, 141, 162-165. In doing so, the SAC is no different from the Amended Complaint, and thus cannot withstand a motion to dismiss the breach of contract claim based on those six documents. See Syracuse, 2012 WL 88332 at *5 (dismissing breach of contract claim under Rule 12(b)(6) where five different contracts were at issue but the plaintiff failed to indicate under which the defendant's obligations arose).

James provides greater detail about Exhibits B & C, but this too falls short of satisfying his burden of stating a claim for relief. Rather, James merely identifies the offer letter and its addendum provided to him on April 5, 2007, relating specifically to the HLC Sales Manager position that he held only until July 11, 2007, and asserts that they are the controlling documents in his breach of contract claim. See SAC ¶¶ 29-34, Exhibits B & C. Notably, the addendum provides in explicit terms that it and the offer letter "is not an employment contract. The terms and conditions outlined here can be changed at any time." See Exhibit C. Thus, to the extent that James claims that his promotion to Branch Manager in July 2007, his so-called demotion to co-branch manager in August 2007, and his so-called demotion to sales manager at the Garden City branch in late November 2007, constituted "breach" of Exhibits B & C, James cannot point to any terms of provisions of those documents upon which to predicate Countrywide's alleged liability. See SAC ¶¶ 34, 37, 48, 82, 114. Nor does James point to any facts suggesting that Exhibits B & C governed any terms or conditions of his employment, including compensation and commissions, at any point *following* his July 2007 promotion to Branch Manager. Thus, James cannot state a viable claim for breach when the alleged contracts at issue were not in effect for the remainder of his employment ending with his resignation in March 2009.

Despite the clear disclaimer stating that the offer letter and addendum were not employment contracts and the terms could be changed at any time, James devotes significant effort to re-stating the contents of Exhibits B & C. In SAC ¶¶ 105 – 107, James repeats the information found in the "Compensation" and "Performance Expectations" sections of Exhibit C. James does not allege that Countrywide did not compensate him according to the provisions of Exhibit C during the period when he was an HLC Sales Manager and the agreement was in effect. Nor does James allege that he satisfied his obligations under the "Performance

Expectations" for that period.  In ¶¶ 109-110, James identifies the remaining "Contingency," "Non-Solicitation," and "Proprietary and Confidential" provisions of Exhibit C, but states only that he complied with them, not that Countrywide in any way breached its corresponding obligations to him.  Notably, despite having repeated all of the material in the addendum attached at Exhibit B, James fails to note the "Employment-At-Will" provision.  See SAC ¶¶ 105-111.

In sum, James predicates his breach of contract claim for unpaid compensation and commissions on the so-called Employment Related Documents, but fails to provide express reference to the terms of the documents which Countrywide allegedly breached.  Rather, James simply refers to the documents repeatedly as being the documents that controlled his compensation and claims he was not compensated accordingly.  But, this Court already determined that such conclusory allegations are insufficient to meet his pleadings requirements. James, 2012 WL 359922 at *22.

### 2. James Cannot Succeed On A Breach Of Contract Claim Premised On His Underlying Allegations Of Discrimination.

James also claims that Countrywide breached the same Employment Related Documents by failing to follow through on its alleged promise of culture and diversity, and by depriving him of "leadership, mentoring and sales support as compared to his Caucasian co-branch manager and to other non-minority branch managers" that was promised to him.  See SAC ¶¶ 43-44, 116, 92.  Moreover, James alleges that the very same acts he claims to have been discriminatory – i.e. – delaying the processing of his loans, failing to provide him adequate support, unconscionable and unreasonable interference with his duties, "sabotage" and other unlawful conduct – constitute breach.  See id. at ¶ 164.  Essentially, James alleges that by discriminating against him, Defendants breached the so-called Employment Related Documents.

However, "a plaintiff cannot turn a defendant's statutory obligation to act in accordance with federal, state, and local laws prohibiting discrimination into a contractual one as well." Martin v. State University of New York, 704 F. Supp. 2d 202, 236 (E.D.N.Y. 2006). James was an at-will employee whose terms and conditions of employment could change at any time, which he acknowledged when he signed and dated the April 5, 2007, offer letter attached to the SAC at Exhibits B, C. James had no contractual right to any of the entitlements he claims above, nor has he identified the terms of any binding agreement that promised him an environment free from the acts that he now claims to have been discriminatory. See Carmody v. Village of Rockville Centre, 661 F. Supp. 2d 299, 338-339 (E.D.N.Y. 2009) (at-will employee who claimed that his employer breached its duties to him by "retaliating against, mistreating and creating a hostile work environment" could not sustain a cause of action for breach of contract).

Because James' breach of contract claim in the SAC is ripe for dismissal under Rule 12(b)(6) for the reasons set forth above, it would be futile for this Court to grant his leave to amend as to that claim.

### D.    The SAC Fails To Supplement James' Conclusory Unjust Enrichment Claim With Facts Sufficient To State A Claim For Relief.

In the Amended Complaint, James brought his unjust enrichment claim as an alternative to his breach of contract claim, and it was based on the allegation that Defendants benefitted from him "by virtue of and in payment and consideration for his loan production services." Amended Complaint at ¶ 180; James, 2012 WL 359922 at *22. James sought restitution in the form of "all earned commissions due and owing." Amended Complaint at ¶ 181; James, 2012 WL 359922 at *22. This Court dismissed James' unjust enrichment claim outright because James "failed to allege that he performed work that exceeded the scope of his duties in any of the positions he held with Countrywide, and he has further failed to allege that his salary did not

provide reasonable value for the services he provided to Countrywide." <u>James</u>, 2012 WL 359922 at *23.

As it relates to the unjust enrichment claim, the SAC is virtually the same as the Amended Complaint. <u>See</u> SAC at ¶¶ 178-181. The Memorandum provides no detail or insight into how the SAC purports to remedy the deficiencies that warranted dismissal of James' unjust enrichment claim. In fact, the Memorandum mentions James' unjust enrichment claim only once – by making the conclusory statement that the SAC "is not futile with respect to the breach of contract, unjust enrichment, and New York Labor Law claim," apparently because James "attaches the relevant employment contract agreements." Memorandum at p.9.

Contrary to James' assertion, it would be futile to grant the Motion to Amend to re-plead a claim for unjust enrichment because the SAC does not, as this Court counseled it should, allege that James performed work that "exceeded the scope of his duties," and that "his salary did not constitute reasonable value for the services he provided." <u>James</u>, 2012 WL 359922 at *22. Nor do the facts alleged satisfy this requirement. James' renewed unjust enrichment claim is anything but new or revised. The claim remains simply a demand for "compensation earned, due and owing." <u>See</u> SAC ¶¶ 133, 179-181. As this Court already dismissed James' unjust enrichment claim based on the very same allegations, it would be futile to allow amendment.

E. **James Has Not Sufficiently Remedied The Deficiencies Identified By This Court In Support of Its Dismissal Of The NYLL Claims.**

This Court dismissed James' claims brought under the FLSA and NYLL. <u>James</u>, 2012 WL 359922 at *20-21. In doing so, the Court held in part that James' claim for "unpaid wages, commissions and bonuses," under both the federal and state rubric, more appropriately should be treated as "part of plaintiff's state law claims for breach of contract and unjust enrichment." <u>Id.</u> at *21 n.9. The SAC, however, re-asserts a claim for unpaid wages and commissions, at least as

they relate to the period between January 1, 2009 and February 19, 2009, as part of Count V for alleged violation of the NYLL.  See SAC at ¶¶ 169, 171-172, 175-176.  James' NYLL claim seeking payment of unpaid wages and commissions, like his breach of contract claim, is based on the so-called Employment Related Documents.

As was the case with the Amended Complaint, James' NYLL claim for unpaid wages and commissions more appropriately is a claim for breach of contract.[6]  In the Memorandum, James provides no legal or factual support as to why this Court was wrong in so deciding. Memorandum at p. 9-10.  Nor does James distinguish or address the case law cited by this Court for that proposition.  Id.; See DeSilva v. North Shore-Long Island Jewish Health System, Inc., 770 F. Supp. 2d 497, 508 n.4 (E.D.N.Y. 2011).

The Court also dismissed James' claim for overtime compensation because he did "little more than assert, in vague and conclusory manner, his entitlement to overtime compensation under the FLSA and NYLL."  James, 2012 WL 359922 at *21.  Moreover, the Court also held that the sections of the NYLL cited by James – ie: §§ 190, 193 and 198 – "are inapposite" to a claim for unpaid overtime and "do not support such a claim."  Id. at *21 n.9.  Yet, in the SAC, James re-alleges his claim under § 190 (definitions only), as well as under § 191-a (definitions only), § 191-c (payment of sales commission to "sales representatives," which James, who asserts that he is a "commissioned salesperson" under the law, does not claim to be), as well as § 650 (Minimum Wage Statement of Public Policy) and 12 NYCRR § 142-2.2 (setting overtime

---

[6] James alleges that he was compensated at all times during his employment pursuant to the so-called Employment Related Documents.  SAC at ¶ 171.  However, as to the period for which he claims unpaid wages and commissions between January and March 2009, James does not identify the contract at issue or its relevant terms.  In fact of the nine "Employment Related Documents" attached as exhibits to the SAC, none appear to govern the period at issue. See SAC, Exs. B-J.  Moreover, even if Exhibit J, the "Mgr. HLC Sales Plan Amendment. Effective March 2008," governed James' employment in 2009 at the Melville branch where he transferred to an unidentified role in September 2008, James has not identified the specific terms of that agreement that Countrywide allegedly breached. SAC at ¶ 102.  Therefore, James' claim for unpaid wages and commissions for the period January to March 2009 fails to state a claim for breach of contract and is subject to dismissal.

rate at one and one-half times an employee's regular rate).  See SAC § 179.  James does not,
however, provide any explanation or argument as to how or whether the statutory and regulatory
provisions cited support a viable NYLL claim.  See Memorandum at p. 9-11.

Instead, to support his newly amended NYLL claim, James relies on the Wage Complaint
filed on or around November 23, 2009, and attached as Exhibit L, to support his claim.
Memorandum at p. 10.  Yet, notably, the Wage Complaint does not allege or make a claim for
overtime pay.  See SAC, Ex. L.  In fact, the Wage Complaint, which is signed by James under
penalty of the New York State penal law, alleges instead that James "typically worked 40 hours a
week."  Id.  Despite his signed statement to the Department of Labor, and in a patent attempt to
state a claim where no such claim exists, James now alleges in the SAC that he "regularly
worked more than forty (40) hours a week," for a total of approximately 600 hours of overtime.
SAC at ¶¶ 177-180.

Although James appears to have taken part of this Court's directive literally – by
identifying "the approximate number of unpaid [] overtime hours allegedly worked," James has
not satisfied his pleading requirement altogether.  James, 2012 WL 359922 at *21.  Instead, what
is key to an overtime claim is identification of the position he held at the time he was allegedly
denied overtime compensation and an explanation of whether that position was, in fact, exempt.
Id. at *21.  Nowhere in the SAC does James allege what position he held at the Melville branch
after he transferred there.  See SAC at ¶¶ 102, 167-182.  Moreover, rather than admit to the
Court that he was a non-exempt employee, and thus not eligible for overtime compensation,
James circuitously alleges instead that he "was not properly classified as an exempt employee" in
the unidentified role he held from October 2008 through March 2009.  See id. at ¶ 181.  As
discussed more comprehensively above, it is James' burden "to clearly and succinctly state [his]

claims." <u>Diez</u>, 2011 WL 4434064, at *2.  This James has not done, and it is unclear from the proposed amended pleading exactly how James contends Countrywide has violated the NYLL. Thus, it would be futile to grant the Motion to Amend, as James cannot state a viable claim merely by parroting this Court's directives in part, without providing the requisite factual or legal groundwork to support his claim.  See <u>Sampson v. Medisys Health Network Inc.</u>, 2011 WL 579155, at *4 (E.D.N.Y. Feb. 8, 2011) (dismissal appropriate when plaintiff failed to give defendant fair notice of the basis of his overtime claim).

**F.     <u>James' Request For Initial Discovery Order Is Pre-Mature and Discovery Should Commence Only After This Court Has Affirmatively Determined Which Claims Are Viable, And After Defendants Have Been Given The Opportunity To Answer Any Amended Pleading That Ultimately Is Allowed By The Court, If At All.</u>**

At this stage in the litigation, without a decision on the Motion to Amend or final determination of the facts and claims at issue, it would be premature and a waste of time and resources to commence discovery.  Under Rule 26(d) of the Federal Rules of Civil Procedure, "[a] party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  There has been no such conferral and it would be inefficient to do so pending the outcome of the Motion to Amend.  Moreover, because no amended pleading has yet been filed, and Defendants have not yet been afforded the opportunity to answer, this Court has not issued a Scheduling or Case Management Order setting forth the parameters of discovery or establishing a relevant timeframe for initiating and completing discovery.  See <u>Del Plato v. Meyeroff</u>, 2008 WL 398547, at *3 (W.D.N.Y. Feb. 12, 2008) (denying discovery request pending motion to amend so that the parties could engage in discovery in the ordinary course of litigation, because the Court had "not yet conducted a preliminary pretrial conference or enacted a Case Management Order setting deadlines for discovery").

Without a final determination of the scope of this case going forward, it would be futile to commence discovery even on a limited scope[7], and James' suggestion that discovery will "further support the facts set forth in the [SAC]" is putting the proverbial cart before the horse. Memorandum at p.11. It is James' obligation to allege sufficient facts to state a claim for relief on its face, and until a final determination of the facts, claims, and issues, Defendants have no corresponding obligation.

For these reasons, Defendants respectfully oppose James' request to initiate discovery.


Dated:  June 29, 2012            /s/ Alice A. Kokodis
                                           Alice A. Kokodis, Esq. (*Pro hac vic*)
                                           Caroline F. Turcotte, Esq. *(Pro hac vice)*
                                           Edwards Wildman Palmer LLP
                                           111 Huntington Avenue
                                           Boston, MA 02199
                                           Telephone:  (617) 239-0253
                                           Fax:  866-227-5399
                                           akokodis@eapdlaw.com

                                           Jonathan Bruno, Esq.
                                           Kaufman Borgeest & Ryan LLP
                                           120 Broadway, 14th Floor
                                           New York, New York 10271
                                           Telephone:  (212) 980-9600


                                           *Attorneys for Defendants*

---

[7] James contradicts his request to initiate discovery only as to the "surviving claims" by identifying documents and information he purports to seek that are not limited to those directly relevant to the surviving claims.  Memorandum at p.11.  James further contradicts himself by admitting that he seeks discovery for purposes of supporting the allegations in the SAC, not merely those in the Amended Complaint.  Id.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 29, 2012, I served by overnight mail and via e-mail pdf  the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint upon Plaintiff's counsel of record as follows:

Jill L. Brooks, Esq.  
Law Firm of Jill L. Brooks, PLLC  
500 Mamaroneck Avenue, Suite 320  
Harrison, NY  10528

Jeanne Christensen  
WEISS IMBESI, PLLC  
450 Seventh Avenue, Suite 3002  
New York, New York 10123

/s/ Alice A. Kokodis  
Alice A. Kokodis